[Civ. No. 864. Second Appellate District.—December 12, 1910.]

L. B. REEDER and GRACE S. REEDER, His Wife, Appellants, v. WELLS, FARGO & COMPANY, a Corporation, Respondent.

COMMON CARRIERS—BREACH OF CONTRACT TO DELIVER TRUNK AND CONTENTS—LOSS BY FIRE IN WAREHOUSE—INSUFFICIENT NOTICE OF ARRIVAL—REVERSAL OF JUDGMENT UPON FINDINGS.—In an action for damages for breach of contract of an express company to carry and deliver a trunk and its contents at Los Angeles to plaintiffs or their agent, or, if unable, to notify them of its arrival, and keep the same as a warehouseman, where the findings show that the same arrived on the morning of June 25th, that during the afternoon defendant mailed a postcard to plaintiffs postmarked 8 P. M. and placed in the general delivery on the morning of the next day, that the trunk with its contents was placed in a warehouse immediately after mailing the card, and that the trunk and contents were damaged by fire that night to the extent of $300, the notice of arrival was insufficient, and a judgment for defendant upon the findings must be reversed and judgment ordered for plaintiff thereon for $300 damages.

ID.—CODE DUTY OF CARRIER AS TO NOTICE OF ARRIVAL.—Under section 2120 of the Civil Code, providing that, "if for any reason a carrier does not deliver freight to the consignee or his agent personally, he must give notice to the consignee of its arrival, and keep the same in safety upon his responsibility as a warehouseman until the consignee has had a reasonable time to remove it. If the place of residence or business of the consignee is unknown, he may give the notice by letter dropped in the postoffice," there is an obligation devolving upon the carrier to deliver the freight to the consignee or his agent personally, or to give notice to the consignee of the arrival thereof.

ID.—CONSTRUCTION OF PROVISION AS TO DEPOSIT OF LETTERS IN POST-OFFICE—MEANS OF NOTICE—REASONABLE LAPSE OF TIME REQUIRED. The provision for notice by depositing a letter in the nearest postoffice is to be construed with the obligation to give notice as providing a means of notice, and where the mails are permitted to be resorted to for the purpose of giving such notice, before a change is worked in the responsibility of the carrier, a reasonable time must elapse after the mailing of the notice before the consignee shall be charged with the effect thereof.

ID.—CONTRACT LIMITING LIABILITY—SPECIAL RATE—ESTOPPEL—INSUFFICIENT ANSWER—FINDING NOT REQUIRED.—Although a valid contract may be made which will limit the amount of recovery, where a special rate is given in consideration of a reduced valuation, and where a shipper has validly stipulated as to the value of the goods, he may be held estopped to recover any greater amount than that so stipulated; yet where the answer does not allege that any special rate was made to shippers by reason of a reduced valuation, it is insufficient to limit its liability for actual loss, and no issue having been properly tendered by the answer on that matter, a finding thereon was not required.

ID.—ABSENCE OF EVIDENCE TO SUPPORT ANSWER—FINDING NOT NECESSARY.—Even if it should be conceded that the answer is sufficient to tender an issue, yet as there is an entire absence of evidence in the record to support the defense therein alleged, no finding thereon was necessary.

ID.—PRESUMPTION AGAINST EVIDENCE.—It must be presumed where there is an absence of a finding upon an issue made by the pleadings that no evidence was offered or heard in support thereof, when none is shown by the record to have been so offered or heard.

APPEAL from a judgment of the Superior Court of Los Angeles County. W. R. Hervey, Judge.

The facts are stated in the opinion of the court.

Cryer & Tuttle, for Appellants.

Gurney E. Newlin, Roy V. Reppy, E. S. Pillsbury, and Alfred Sutro, for Respondent.

Henley C. Booth, and E. W. Camp, *Amici Curiae*, for Respondent for rehearing in supreme court.

JAMES, J.—This action was brought to recover damages alleged to have been suffered by plaintiffs through the breach of contract of defendant as a common carrier to deliver safely a certain trunk and its contents. Judgment was awarded defendant and plaintiffs have appealed.

From the findings of fact made by the trial court it appears that on the twenty-fourth day of June, 1909, plaintiffs delivered to defendant at Long Beach, California, a trunk and its contents. Defendant thereupon undertook and agreed to transmit to Los Angeles and deliver "to plaintiffs or their agent personally, or, if for any reason it was unable so to do, to give notice to said plaintiffs of the arrival of said trunk and contents, and to keep the same upon the responsibility of said defendant as a warehouseman." It is further found that in pursuance of said agreement defendant did transport the trunk, and that it arrived in Los Angeles on the morning of June 25, 1909; that the place of residence of plaintiffs being unknown, defendant on the afternoon of the twenty-fifth day of June deposited in the mail a postcard containing a notice of the arrival of the trunk, which postcard was postmarked, "June 25, 1909, 8 p. m.," and "was placed in the general delivery of the postoffice on the morning of June 26, 1909"; that after mailing the card the trunk was placed by defendant in a fire-proof warehouse; that during the night of June 25th a fire occurred in said warehouse whereby the trunk and contents were damaged to the extent of $300 without any negligence on the part of defendant. Upon these findings it is contended that the judgment entered in favor of defendant was not warranted. There is no disagreement between the parties that the defendant would have been responsible upon its liability as an insurer for any damage done to the trunk or contents from the time delivery was made to it until notice to the consignees of arrival was de-

posited in the mails. Their point of difference is as to whether or not, upon the mere mailing of notice of arrival, the liability of the defendant was changed from that of insurer to that of warehouseman, with the liability only of a depositary for hire. If the last legal situation resulted immediately upon the mailing of the notification card, then as a warehouseman is only liable for damages caused to property in his custody which arises from his negligence, there would be in this case no right of recovery. If, on the other hand, the responsibility of defendant as an insurer continued until a reasonable time had elapsed for the delivery of the card through the mails, then the plaintiffs were entitled to judgment. The trial judge concluded that the liability of defendant did not continue after the notification card was deposited in the mails, and accordingly entered the judgment indicated. In that determination of the question presented we do not concur.

A careful consideration of the code provisions affecting the way by which a common carrier may change its responsibility from insurer to warehouseman leads us to the conclusion that upon the findings as made judgment should have been entered in favor of plaintiffs. This observation is made, however, leaving aside for the moment another point presented respecting the third alleged defense set up in the answer of defendant upon which there were no findings. Section 2120, Civil Code, provides as follows: "If, for any reason, a carrier does not deliver freight to the consignee or his agent personally, he must give notice to the consignee of its arrival, and keep the same in safety, upon his responsibility as a warehouseman, until the consignee has had a reasonable time to remove it. If the place of residence or business of the consignee be unknown to the carrier, he may give the notice by letter dropped in the nearest postoffice." By this section there is an obligation devolving upon the carrier to deliver freight to the consignee or his agent personally, or to give notice to the consignee of the arrival thereof. The latter portion of the section furnishes a means by which such notice may be given in the event that the address of the consignee is unknown to the carrier. It is provided in such a case that "he may give the notice by letter dropped in the nearest postoffice." Suppose, for instance, that the carrier does know the address of

the consignee and dispatches a messenger to that address for the purpose of communicating notice of the arrival of the goods shipped. It would not be contended, we apprehend, that the notice would be deemed complete at the time of the dispatch of the messenger. The notice to the consignee in that case would be complete only when communicated to him. The statute contemplates undoubtedly that before the carrier shall be permitted to change the extent of his liability to the consignee to that of warehouseman that the consignee shall actually have notice of the arrival of the goods. Where the mails are permitted to be resorted to for the purpose of giving such notice, then, surely, before a change is worked in the responsibility of the carrier, a reasonable time must elapse after depositing in the mails of the notice before the consignee shall be charged with the effect thereof. Added force is lent to this construction by a consideration of section 2121, Civil Code, immediately following that quoted. This latter section provides: "If a consignee does not accept and remove freight within a reasonable time after the carrier has fulfilled his obligation to deliver, or duly offered to fulfill the same, the carrier may exonerate himself from further liability by placing the freight in a suitable warehouse, or storage, on account of the consignee, and giving notice thereof to him." By this provision the carrier is permitted, when a reasonable time has elapsed after such carrier has offered to deliver freight, to exonerate itself altogether by storing the freight in a suitable warehouse. The "reasonable time" mentioned commences to run only after the carrier has offered to deliver. If its offer to deliver is given by letter dropped in the postoffice, as is provided for by section 2120, Civil Code, there is strong reason for concluding that the intention of the legislature was that the notice should either be received by the consignee, or sufficient time elapse for it to be delivered to him in the usual course of mail, before the "reasonable time" mentioned in section 2121 would commence to run against the assignee. In *Wilson* v. *California C. R. R. Co.*, 94 Cal. 178, [29 Pac. 866, 17 L. R. A. 685], the court says: "The plain meaning of this section (Civ. Code, sec. 2120) seems to be that, in order to reduce the responsibility of the carrier to that of a warehouseman, the notice required by the section must be given. . . . The rule requiring railroad companies to give notice to con-

signees of the arrival of their goods, so far as practicable, in order to reduce the liability of the carrier to that of warehouseman, irrespective of statutory enactment, seems to be founded upon the better reason and supported by the weight of authority in other states and in England. (Hutchinson on Carriers, secs. 373, 374, and notes.)'' In this case the findings recite that the card notifying consignees of the arrival of the trunk was postmarked ''Los Angeles, Cal., June 25, 8 p. m.,'' and ''was placed in the general delivery of said postoffice on the morning of June 26th.'' The trunk and its contents were damaged by fire during the night of June 25th and before the card went out of the postoffice for delivery, which was on the morning of the 26th.

In a defense set up as a third and separate defense on the part of defendant in its answer, it was alleged that the defendant did not, at the time of the shipment of the trunk, or at any time before the arrival of the trunk in Los Angeles, have any information or belief as to the contents of the trunk, or the value of the trunk; defendant then alleged: ''That said charge for carrying said property was based upon a valuation not exceeding fifty dollars, and that the said plaintiffs agreed that the said defendant should not be liable in any event for more than fifty dollars for failure through any cause to deliver said trunk and contents to the plaintiffs in good order and condition, and that in case of partial loss or damage said defendant should not be liable for more than such a proportion of the same as fifty dollars bore to the actual value, if greater than fifty dollars.'' By this defense it was sought by defendant, in the event damages were recovered against it, to limit the amount of the recovery to fifty dollars. By the findings of the court it was determined that the amount of damage suffered was the sum of $300. No findings were made upon this third defense of the defendant. It seems to be settled, both by the code provisions and the decisions, that a valid contract may be made which will limit the amount of recovery in a case like this where a special rate is given for the carriage of property to the value agreed upon between the shipper and carrier (*Larsen* v. *Oregon Short Line R. Co.* (Utah), 110 Pac. 983; Civ. Code, sec. 2174); and where a shipper in advance has stipulated as to the value of his goods, he may be held estopped in an action for damages to claim the

right to recover any amount greater than that so stipulated. (*Donlon Bros.* v. *Southern Pac. Co.*, 151 Cal. 763, [91 Pac. 603, 11 L. R. A., N. S., 811].) If the defendant by its answer sufficiently alleged an agreement based upon a sufficient consideration made between itself and the consignees, determining in advance the value to be placed upon the goods shipped in the event of their damage or destruction, then an issue would have been presented upon which the court should have made findings. We do not consider, however, that such an agreement was sufficiently alleged in the answer. It is not there alleged that any special rate was made to the shippers by reason of their agreement not to hold the defendant liable for more than fifty dollars for failure to deliver the trunk and contents in good order and condition. The allegation only is that the charge for carrying the property was based upon a valuation not exceeding fifty dollars. Whether this charge was less or more than the amount which would have been charged had the property been differently valued is not alleged and does not appear in the answer of defendant. No issue, therefore, having been properly tendered by this answer, it was unnecessary for the court to make a finding thereon.

As to the alleged fourth defense set out in defendant's answer, the findings as made sufficiently cover every issue tendered by it.

The judgment is reversed, with directions to the trial court to enter judgment upon the findings in favor of plaintiffs for the sum of $300.

Allen, P. J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 11, 1911, and the following opinion rendered thereon:

THE COURT.—The petition of respondent for a rehearing is denied. Its contention that a new trial should have been ordered, rather than that a judgment should have been directed to be entered upon the findings, as was done, may be fully answered: The trial court failed to find upon the issue presented in the third alleged defense set out in defendant's answer as to a contract having been made between the shipper

and carrier limiting liability. It was not necessary for the court to make a finding upon any issue in support of which no evidence was offered, and it is not shown that there was evidence before the court touching the defense mentioned. It must be presumed where there is an absence of a finding upon an issue made by the pleadings that no evidence was offered or heard in support thereof when none is shown by the record to have been so offered or heard. Therefore, conceding that in the third alleged defense a contract limiting liability was sufficiently pleaded, nevertheless, upon the findings as made, it was proper for this court to make the order which was made directing judgment to be entered in favor of plaintiffs. (*Eva* v. *Symons,* 145 Cal. 202, [78 Pac. 648] ; *People* v. *McCue,* 150 Cal. 200, [88 Pac. 899].)

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 9, 1911.