[Civ. No. 1950.    Third Appellate District.—April 8, 1919.]

CRENSHAW BROS. AND SAFFOLD (a Copartnership, etc.), Respondents, v. SOUTHERN PACIFIC COMPANY (a Corporation), Appellant.

[1] COMMON CARRIERS—BILLS OF LADING—LIMITATION OF LIABILITY—VALIDITY OF PROVISION.—A provision in a bill of lading that "the amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including freight charges, if prepaid) at the place and time of shipment under the bill of lading . . . whether or not such loss or damage occurs from negligence," is valid as to transactions involving interstate commerce.

[2] ID.—SEPARATE CHARGE FOR REFRIGERATION—EFFECT ON CONTRACT.—Such covenant in a contract in connection with the shipment of fruit is not affected by the fact that there is a separate and distinct charge for refrigeration, although the loss may be from imperfect refrigeration, where such refrigeration is inseparably connected

with the transportation of the fruit and is an essential part of the transaction.

[3] ID.—LOSS—MEASURE OF DAMAGES.—Under such form of contract the shipper can recover only his actual loss instead of his full compensatory damage.

APPEAL from a judgment of the Superior Court of San Joaquin County. D. M. Young, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Arthur L. Levinsky for Appellant.

L. T. Hatfield for Respondents.

BURNETT, J.—The action was brought to recover damages for breach of contract in relation to the shipment of three separate and distinct consignments of grapes from three different points in California to Tampa, Florida. Briefly stated, the damage claimed was due to imperfect refrigeration, rough handling of the fruit, and unnecessary delay in transportation. The court found in favor of plaintiffs, and the appeal is taken from the judgment on a bill of exceptions. Only one question is open for consideration in this court, and that is, What is the measure or standard by which the amount of compensation is to be determined? Every other question was waived by appellant in the court below, and, of course, on principle as well as authority, we must accord full significance to that waiver.

[1] The controversy revolves about this provision in the bill of lading: "The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including freight charges, if prepaid) at the place and time of shipment under the bill of lading . . . whether or not such loss or damage occurs from negligence."

There is no dispute that the transaction involved interstate commerce or that appellant had filed with the interstate commerce commission its schedule of rates, fares, and charges for transportation as required by the interstate commerce law. Nor is it claimed that any fraud or want of good faith characterized the execution of the contract between the parties

for the shipment of the fruit. Respondents, however, do make the contention that said provision is void because against sound public policy.

A detailed consideration of the various objections to the legal operation and effectiveness of the provision is not required, since the validity of such contract has been so directly and positively affirmed by the courts, including the supreme court of this state and the United States supreme court, that the question is no longer open to discussion. Of course, the circumstances and conditions of each particular case must be regarded in the interpretation of the contract, but it cannot be regarded as unlawful or inoperative.

In *Kansas City S. R. Co.* v. *Carl*, 227 U. S. 639, [57 L. Ed. 683, 33 Sup. Ct. Rep. 391, see, also, Rose's U. S. Notes], a box of household goods was lost in transportation and the shipper sued to recover its value. The main defense was that the liability was limited to the sum of five dollars per hundred weight, the value agreed upon at the time and place of shipment. Many cases are reviewed in the opinion and the court declares: "But when a shipper delivers a package for shipment and declares a value either upon request or voluntarily and the carrier makes a rate accordingly, the shipper is estopped, upon plain principles of justice, from recovering, in case of loss or damage, any greater amount. The same principle applies if the value be declared in the form of a contract. . . . The ground upon which such a declared or agreed value is upheld, is that of estoppel." It is not important that in the case at bar the agreement did not specify the value. It left that to be ascertained, but limited it to a particular time and place. The same principle would, manifestly, apply as though the parties had stated the exact value. Indeed, as we shall see hereafter, there is no controversy as to the value of the property at the time and place of shipment. Nor is there any dispute that the shipper had the option to demand, on the condition of paying a greater rate, a more favorable contract as to the liability of the carrier.

In *Georgia etc. Ry. Co.* v. *Blish Milling Co.*, 241 U. S. 188, [60 L. Ed. 948, 36 Sup. Ct. Rep. 541], while the main questions discussed were whether the plaintiff's exclusive remedy was against the initial carrier and whether the action was barred, the court declared: "But the parties could not waive the terms of the contract under which the shipment was made

pursuant to the federal act; nor could the carrier by its conduct give the shipper the right to ignore these terms which were applicable to that conduct, and hold the carrier to a different responsibility from that fixed by the agreement made under the published tariff and regulation."

In *Pennsylvania R. R. Co.* v. *Olevit Bros.*, 243 U. S. 574, [61 L. Ed. 908, 37 Sup. Ct. Rep. 468], the validity of such provision was conceded by both parties, the controversy being over the questions as to the meaning of the phrase "lawful holder" in what is known as the Carmack amendment to the Interstate Commerce Act, whether there was any evidence of negligence on the part of the defendant, and whether plaintiff was entitled to recover the freight paid by it; the court, however, after quoting said provision from the bill of lading, said: "Some of the bills of lading do not contain this provision, but it was agreed at the trial that the proper measure of damages was to be computed upon the basis of the value of the property at the place and time of shipment and that such measure should be read into all of the bills of lading. As plaintiff further says, to recover the damages sustained by it based upon this value, plaintiff must receive from defendant the difference between the value and the proceeds of the sale, and the freight paid. In this we concur, and therefore there was no error in including in the recovery such freight."

*Gulf etc. Ry. Co.* v. *Texas Packing Co.*, 244 U. S. 31, [61 L. Ed. 970, 37 Sup. Ct. Rep. 487], involved the shipment of poultry, the goods having been damaged by reason of the negligence of the carrier, and sold by the shipper at the point of destination. One of the vital questions considered was whether the trial court erred in giving to the jury the following instruction: "If you find for the plaintiff you will assess the damages at the difference between the invoice price of said poultry, to wit, the sum of $22,238.56, and the value of said poultry at the time the same was delivered to plaintiff, or its agents, the Western Cold Storage Company in Chicago, by the carrier with six per cent interest per annum, from Jan. 15, 1911."

The court declared: "We think that in taking this sum as the basis of computing damages the trial court did but enforce the stipulation in the bills of lading. . . . We think the court properly charged the jury to take the difference between the invoice price and the value of the poultry at the time the same was delivered in Chicago in arriving at the amount of

damages. . . . Apart from the stipulation of these bills of
lading, the ordinary measure of damages in cases of this sort
is the difference between the market value of the property in
the condition in which it should have arrived at the place
of destination and its market value in the condition in which,
by reason of the fault of the carrier, it did arrive. (*New
York etc. R. R. Co.* v. *Estill,* 147 U. S. 616, [37 L. Ed. 292,
13 Sup. Ct. Rep. 444, see, also, Rose's U.· S. Notes].)   The
stipulations of these bills of lading changed the rule in the
requirement that the invoice price at the place of shipment
should be the basis for assessing the damage.''

The case of *Boston & Maine R. R.* v. *Piper,* 246 U. S. 439,
[Ann. Cas. 1918E, 469, 62 L. Ed. 820, 38 Sup. Ct. Rep. 354],
is not opposed to the foregoing.   Therein it was held that
a provision exonerating the carrier from losses incurred by
the shipper in consequence of the negligence of the former
is illegal and not binding upon the shipper, and ''is not
within the principle of limiting liability to an agreed valua-
tion which has been made the basis of a reduced rate.''

In no decision to which our attention has been called has the
subject received more careful and thorough consideration
than in *Zoller Hop Co.* v. *Southern Pacific Co.,* 72 Or. 262,
[143 Pac. 931], decided by the supreme court of Oregon.
Therein it is said: ''It is reasonable and natural that the care
and risk involved in the carriage of goods should be in pro-
portion to their value.   It is proper and legitimate that the
greater the risk and responsibility, the greater should be the
recompense to the one concurring therein.   The converse is
equally true, so that consequent damages are reduced in pro-
portion to the lesser responsibility for the goods.   The risk
and the rate have a logical and corresponding relation to each
other, based upon the value of the property intrusted to the
carrier.   If it is lawful to agree in advance upon a more or
less conventional value of the chattels for the purpose of se-
curing cheaper rates in favor of the shipper, it is quite as
proper to use the same value as a basis upon which to compute
damage for the breach of the contract . . . It accords with
sound doctrine, therefore, that at the outset the parties may
in good faith fix upon the value of the property for all con-
tingencies likely to arise in the transaction, and this does
not in any way relieve the carrier from the results of his
own negligence.''

In 10 Corpus Juris, 57, it is said: "Before the enactment of the Carmack amendment the greatest confusion existed as to whether a limitation of the carrier's liability for loss or injury to a specified value was valid in case the shipment was lost or injured by reason of the negligence of the carrier . . . The effect of the Carmack amendment is, of course, to make the rule uniform in all jurisdictions of the United States, so far as interstate shipments are concerned, and to render valid a limitation of the character under consideration, whether the loss or injury was due to the carrier's negligence or not."

Furthermore, it is said that even in states where such a contract is held void under statutes prohibiting carriers from limiting their common-law liability, "a contract for an interstate shipment, made in a state where such a statute is in force, is valid under the Carmack amendment, inasmuch as the decisions of the federal courts prior to the amendment held such contracts valid."

Our own supreme court has also directly upheld the validity of such agreement.

In *Pierce* v. *Southern Pacific Co.*, 120 Cal. 156, [40 L. R. A. 350, 52 Pac. 302], it was declared that effect must be given to the contract of the parties making the invoice price at the point of shipment the measure of damage, "and where no invoice price was actually made out, and agreed upon, that expression must be understood as indicating the actual cash value of the trees at the point of shipment, when loaded and ready for transportation."

The question was fully considered in *Donlon Bros.* v. *Southern Pacific Co.*, 151 Cal. 763, [12 Ann. Cas. 1118, 11 L. R. A. (N. S.) 811, 91 Pac. 903], involving the shipment of horses, and the court said: "The contract is one in which the valuation of the property was agreed to and for the purpose of fixing transportation charges and as measuring the responsibility of appellant. It was not a contract limiting liability. It was a contract dealing primarily with value—the value of the horses shipped. That was agreed to and, of course, the agreed valuation must be deemed to be the actual valuation of the contract—its actual valuation for all purposes of the contract."

[2] Nor do we understand how this covenant in the contract is affected in the least by the fact that there was a

separate and distinct charge for the refrigeration. The charge was distinct, but the refrigeration itself was inseparably connected with the transportation of the fruit and was an essential part of the transaction. The loss from imperfect refrigeration was damage for which the carrier was liable on that bill of lading and the condition to which we have reference applied "to *any* loss or damage for which the carrier is liable." The fact that there was only one rate for the refrigeration does not derogate from the validity of the contract, since the difference in the rate for the transportation would be a sufficient consideration to uphold it.

Another important question is involved in the construction and application of this provision of the contract.

As to the first count in the complaint the court found that the grapes were sold to the best advantage for the sum of $980; that the amount of the freight charge was $496.12 and of the refrigeration was $95; that the invoice value was $783; that if the fruit had arrived in time and uninjured, it could have been sold for $1,957.50. The court concluded that the plaintiffs suffered damage to the extent of the difference between said $1,957.50 and $980, to wit, the sum of $977.50, for which judgment was allowed.

As to the second count, the court found that the fruit was sold for the sum of $1,097.75, and that if it had been received on time and in a marketable condition it would have brought the sum of $1,860. It was also found that the invoice price was $930, the freight charge $494.97, and the refrigeration charge the sum of $95. The damage allowed was, therefore, the sum of $762.25.

In reference to the third shipment, it was found that it was sold for $1,133.75, that if there had been no breach of the contract, it could have been sold for $2,557.50; that the invoice price was $1,255.50, the charge for transportation was $494.97, and for refrigeration was $95. The court allowed as damages the difference between the selling price and what it would have brought, to wit, the sum of $1,423.75.

It is the claim of appellant that, in any event, under said provision of the bill of lading the extent of the recovery is measured by the actual loss, which is determined by the difference between the invoice price with the freight and refrigeration charge added, and the selling price, and that it was entirely improper for the court to consider what the fruit

might have sold for at the point of destination. Under this view, for the first mentioned shipment, the account would stand as follows:

| | |
|---|---|
| Actual cost of fruit | $783.00 |
| Freight paid | 591.12 |
| | $1,374.12 |
| Fruit brought | 980.00 |
| Loss | $394.12 |

For the second cause of action we would have:

| | |
|---|---|
| Cost | $930.00 |
| Freight paid | 589.97 |
| | $1,519.97 |
| Fruit brought | 1,097.75 |
| Loss | $422.22 |

The third would stand as follows:

| | |
|---|---|
| Cost | $1,255.50 |
| Freight paid | 589.97 |
| | $1,845.47 |
| Fruit brought | 1,133.75 |
| Loss | $ 711.72 |

[3] Another view of the construction of said provision, which supports the conclusion of the lower court, suggested by respondents, is that said invoice price simply provides the *maximum* amount to be recovered in case of loss, but does not prevent the recovery of the difference between the selling price and what the goods could have been sold for if there had been no injury, provided such difference does not exceed said invoice price. Such seems to be the view taken by the supreme court of this state in the very recent case of *Olcovich* v. *Grand Trunk Ry. Co.*, 179 Cal. 332, [176 Pac. 459]. Therein it is said: ''While there are late cases holding that the measure of damages under such a bill of lading as that herein is the difference between the cost price at the shipping point and the selling price of the injured freight at the point of destination . . . we prefer to follow the general view above stated.'' The general view to which the court thus refers is

expressed in the earlier part of the opinion as follows: "While the exact question has never been determined in this state, in the case of a partial loss with such a contract it has been determined, in harmony with the general view, that the loss is limited by the value stated and agreed upon in the bill of lading in the case of a total loss. (*Pierce* v. *Southern Pacific Co., supra.*)   If this limit is valid as to a total loss, there seems to be no reason why it should not also be considered as a limitation upon the damage in the case of a partial loss."   It is declared further that the authorities are not in accord as to the question, but the supreme court approved the view announced in 10 Corpus Juris, section 612, and 3 Sutherland on Damages, 3391.

In the Pierce case, *supra,* it is to be observed that the bill of lading provided "that the actual invoice cost at point of shipment will be taken as *measure* of damages," language of somewhat different import from that to be construed herein. It was also held that it was error for the lower court to permit the market value of the trees at Riverside, the point of destination, to be shown, and that the injury should have been limited to what was the value in Florida, the shipping point. It was, therefore, in effect held that the value in Florida was not only the *measure* of the damages that could be recovered, but that it was the only *basis* upon which such damage could be computed.   It may be added that obviously it would have made no difference in the result in that case whether said value was considered as the measure of the recovery or the basis upon which the damages should be computed, since there was a total loss.

In Corpus Juris, *supra,* the rule is stated as follows: "The parties may, by express provisions to that effect, stipulate that in case of partial loss, the damage shall be proportioned on the basis of the sum named as the maximum limit; but where this is not done the question becomes one of construction and very generally the view is entertained that such stipulations are to be considered as permitting recovery for the damages actually done, the amount recoverable not to exceed the amount agreed on as compensation for a total loss."

As stated in Sutherland, *supra,* "where a statute authorizes a limitation of liability by contract and a contract is made limiting liability for loss of livestock to the actual cost at point of shipment and in no event to exceed a stipulated sum

per head, the measure of damages for injuries to the animals in transit due to negligence is the amount that each has depreciated in value, but in no event to exceed the actual cost at point of shipment as shown by the market value there or the stipulated value.''

An examination of the cases cited by Corpus Juris and Sutherland, *supra,* in support of the text shows that the phraseology of the respective bills of lading is somewhat different from the language involved herein, and it lends itself more easily to the construction that the invoice price was intended to be the *measure* rather than the *basis* of the amount recoverable.

It may be said, also, of the Olcovich case, *supra,* that it arose prior to the adoption of the uniform bill of lading in 1908. The corresponding provision, though, in the bill of lading involved in said case was: ''The amount of loss or damage for which the carrier becomes liable shall be computed at the value of the property at the place and time of shipment,'' being substantially the same in that respect as the bill of lading herein. Said decision undoubtedly, therefore, favors the conclusion of the trial court in this case, since the damages awarded for each shipment are less than the amount of the invoice value and freight.

However, we cannot reconcile this view with the decision of the United States supreme court in the Texas case, in 244 U. S., *supra.*

The interpretation of the uniform bill of lading issued in accordance with the schedule of freights and fares filed with the Interstate Commerce Commission in pursuance of the act of Congress and relating to an interstate shipment, and the consideration of the liability of the shipper thereunder, involve federal questions concerning which the decisions of the federal courts are supreme. (*Southern Ry. Co.* v. *Prescott,* 240 U. S. 632, [60 L. Ed. 836, 36 Sup. Ct. Rep. 469]; *Georgia etc. R. R. Co.* v. *Blish Milling Co.,* 241 U. S. 190, [60 L. Ed. 948, 36 Sup. Ct. Rep. 541]; *Atchison etc. Ry. Co.* v. *Harold,* 241 U. S. 371, [60 L. Ed. 1050, 36 Sup. Ct. Rep. 665].)

In the Prescott case it is said: ''Viewing the contract set forth in the bill of lading as still in force, the measure of liability under it must also be regarded as a federal question. As it has often been said, the statutory provisions manifest the intent of Congress that the obligation of the carrier

with respect to the services within the purview of the statute shall be governed by uniform rule in the place of the divers requirements of state legislation and decisions," citing a large number of cases.

The case of *Detroit & M. Ry. Co.* v. *Fletcher Paper Co.*, 248 U. S. 30, [63 L. Ed. 107, 39 Sup. Ct. Rep. 13], involves an entirely different question.

Therein the suits were brought to recover the difference between the rates fixed by the Michigan Railroad Commission on logs carried *wholly within the state* and the higher rates that the defendant actually charged. The court held that the determination of the merits of the controversy depended upon the construction of the state laws, as to which the state "has the last word." It was expressly stated that the cases did not involve interstate commerce.

We see no escape from the conclusion that under the decisions of the highest court of the land the award of the trial court was too high.

To state it sententiously: The United States supreme court holds that under this form of contract the shipper can recover only his *actual* loss instead of his full compensatory damage.

It is not necessary, though, to reverse the case, since the findings of fact are complete. The judgment is modified so as to provide that "plaintiffs do have and recover of and from the Southern Pacific Company, a corporation, the defendant, the sum of $1,528.06, with interest thereon at the rate of seven per cent per annum, as follows: On the sum of $394.12 from the twenty-first day of October, 1913; on the sum of $422.22 from the twenty-third day of October, 1913; and on the sum of $711.72 from the fourteenth day of November, 1913," and, as thus modified, the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard by the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 5, 1919.

All the Justices concurred.