[Civ. No. 3990.   Second Appellate District, Division Two.—July 29, 1925.]

FRED McMULLIN, Respondent, v. LYON FIREPROOF STORAGE COMPANY (a Corporation), Appellant.

[1] WAREHOUSEMEN—STORAGE OF COMMUNITY PROPERTY—ORDER TO DELIVER TO WIFE—CONVERSION—EVIDENCE—FINDINGS—APPEAL.—In this action by a husband against a warehouse keeper for damages for the conversion of certain community personal property deposited by plaintiff with defendant in the name of the plaintiff, and which defendant delivered to the wife of plaintiff, the finding

of the trial court, based upon conflicting evidence, that the delivery of the property to the wife was not made upon the written order of plaintiff, was final on appeal.

[2] Id.—Storage of Goods by Husband—Non-negotiable Receipt— Unjustified Delivery to Wife.—At the time said community personal property was deposited with said warehouse keeper by the husband, the former having issued to the latter its non-negotiable warehouse receipt, in accordance with the provision of the Warehouse Act (Stats. 1909, p. 437), which receipt recited, among others things, that the goods would be "delivered upon receipt of a written order signed by the person in whose name they are stored," and at the time of depositing said goods the warehouse keeper having also issued to the husband a document, a part of which, under the heading "Important" read: "Goods can only be delivered on the order of the party in whose name they are stored. This rule applies to husband, or wife, as well as others," said warehouse keeper was not justified in delivering the goods to the wife.

[3] Id.—Right of Husband to Store Community Property.—The act of the husband in depositing the community personal property with said warehouse keeper did not constitute the making of a gift or the disposing thereof without valuable consideration, within the meaning of the proviso clause of section 172 of the Civil Code; and under the first part of said section the husband was allowed to so store said goods as if they were his separate estate.

[4] Id.—Right of Action in Favor of Community—Parties.—If a cause of action for the recovery of said community personal property so stored had arisen in favor of the community while the warehouse keeper yet held them, the wife could not maintain suit to enforce the claim, if the husband were still alive and were still her husband, and if the cause of action arose from no act of his.

[5] Id.—Breach of Agreement—Negligence.—The, community personal property having been deposited with the warehouse keeper by the husband, in his own name, the breach of the warehouse keeper's agreement to deliver the goods only to the husband, or upon his order, constituted negligence.

[6] Id.—Limitation of Liability—Value of Goods—Valid Receipt. A provision in a warehouse receipt that the responsibility of the warehouse keeper shall be limited to the sum of twenty-five dollars for each piece or parcel stored, or its contents, unless the value thereof is made known at the time of storage, when a higher

2.   See 25 Cal. Jur. 956.
4.   See 5 Cal. Jur. 337.
5.   See 25 Cal. Jur. 957.
6.   See 25 Cal. Jur. 962.

rate for storage will be charged, is not invalid as being within the inhibition of section 3 of the Warehouse Act, which provides that "A warehouseman may insert in a receipt, issued by him, any other terms and conditions, provided that such terms and conditions shall not . . . in anywise impair his obligation to exercise that degree of care in the safekeeping of the goods intrusted to him which a reasonably prudent man would exercise in regard to similar goods of his own."

(1) 4 C. J., p. 883, n. 33.    (2) 40 Cyc., p. 441, n. 46.    (3) 31 C. J., p. 129, n. 82.    (4) 31 C. J., p. 145, n. 23.    (5) 40 Cyc., p. 441, n. 46.    (6) 40 Cyc., p. 481, n. 41.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. P. Wood, Judge.   Modified and affirmed.

The facts are stated in the opinion of the court.

Charles A. Post and H. S. Clewett for Appellant.

Lucius L. Solomons and Fred C. Peterson for Respondent.

WORKS, J.—This is an action in conversion.  Plaintiff, a married man, deposited certain personal effects, the community property of himself and his wife, with defendant, a warehouse keeper, and they were stored by defendant in plaintiff's name.   Defendant thereafter delivered the articles to the wife and the present action was the result of the delivery, suit having been instituted after due demand by plaintiff for a return of the goods.   Plaintiff had judgment and defendant appeals.

[1]   One of the questions of fact at the trial was whether the delivery of the property to the wife was made upon the written order of respondent, presented to appellant by the wife.   The trial court found that the wife presented no such order to appellant and that respondent issued no such order.   It is contended that the finding was not supported by the evidence.   The wife testified that the alleged order was given her by respondent, that she exhibited it to appellant before the personal property was delivered to her, but did not leave it with appellant, and that she thereafter destroyed it.   Other witnesses testified that they had seen the alleged order.   On the other hand, respondent testified that he never issued or made such a document.   Under these

circumstances the finding must stand. The record shows but a conflict of evidence and the determination of the trial court upon the subject is therefore final.

The court also found that appellant delivered the articles to the wife "without authority and contrary to the terms and conditions of its storage receipt" which was issued to respondent when he made deposit of the goods. It is insisted that this finding was not sustained by the evidence and in support of the contention the argument is advanced that, the deposited articles having been community property, a delivery to the wife was a delivery to the husband, or, at least, that the wife, because of her community interest, was as much entitled to the possession of the property as was the husband, although the delivery for storage with the depositary was made by him and not by her. This point is also made against a finding of the trial court that appellant converted the goods to its own use by making delivery of them to the wife.

[2] The business of appellant as a warehouse keeper is regulated by the provisions of an act of the legislature passed in 1909 (Stats. 1909, p. 437; Deering Gen. Laws 1923, Act 9059). Section 8 of the act provides, in part, the portions omitted not being pertinent to the present inquiry: "A warehouseman, in the absence of some lawful excuse provided by this act, is bound to deliver the goods upon a demand made either by the holder of a receipt for the goods or by the depositor . . . In case the warehouseman refuses or fails to deliver the goods in compliance with a demand by the holder or depositor, . . . the burden shall be upon the warehouseman to establish the existence of a lawful excuse for such refusal." Section 9 reads: "A warehouseman is justified in delivering the goods subject to the provisions of the three following sections, to one who is—(a) The person lawfully entitled to the possession of the goods, or his agent, (b) A person who is either himself entitled to delivery by the terms of a non-negotiable receipt issued for the goods, or who has written authority from the person so entitled either indorsed upon the receipt or written upon another paper, or (c) A person in possession of a negotiable receipt by the terms of which the goods are deliverable to him or order or to bearer, or which has been indorsed to him or in blank by the person to whom delivery was

promised by the terms of the receipt or by his mediate or immediate indorsee.'' Section 10 of the act follows: ''Where a warehouseman delivers the goods to one who is not in fact lawfully entitled to the possession of them, the warehouseman shall be liable as for conversion to all having a right of property or possession in the goods if he delivered the goods otherwise than as authorized by subdivisions (b) and (c) of the preceding section and though he delivered the goods as authorized by said subdivision[s] he shall be so liable, if prior to such delivery he had either (a) Been requested, by or on behalf of the person lawfully entitled to a right of property or possession in the goods, not to make such delivery, or (b) Had information that the delivery about to be made was to one not lawfully entitled to the possession of the goods.'' Sections 11 and 12 are also referred to in section 9, but nothing in either of them is material to the present controversy.

At the time of the deposit of the personal property with appellant by respondent, the former issued to the latter its non-negotiable warehouse receipt, in accordance with provisions of the Warehouse Act to which we have not found it necessary to refer. The receipt contained the following language: ''Received for the account of Fred McMullen, the goods enumerated in the schedule annexed . . . Goods will be delivered upon receipt of a written order signed by the person in whose name they are stored. . . . '' Appellant also issued to respondent, at the time the goods were deposited, a document, a part of which, under the heading, ''Important,'' read: ''Many of our customers are not familiar with warehouse rules that are required by the laws of this State and which are for the protection of the customer who stores his goods, as well as for the warehouseman. Goods can only be delivered on the order of the party in whose name they are stored. This rule applies to husband, or wife, as well as others. . . . Should you desire to allow any other than yourself to have access to, or to remove, any or all of your goods, please fill in, sign and mail us the attached blank order and have the party so authorized sign his or her name for identification.'' The blank order mentioned was part of the document.

Under the provisions of the Warehouse Act, and upon the language of the documents issued by appellant to respondent

pursuant to its terms, we cannot perceive how appellant can justify a delivery of the stored goods to the wife of respondent. It is at once obvious that the delivery was not proper under the provisions of either subdivision (b) or subdivision (c) of section 9 of the act, as the wife was not within the terms of either. How can she have been within the language of subdivision (a)? Was she "lawfully entitled to the possession of the goods" merely because they were community property? Under the provisions of subdivision (a) the warehouse keeper doubtless could have delivered the property to anyone who was entitled to their exclusive possession as against respondent, with impunity. That seems apparent from the very language of the law. But such a right on the part of appellant is very different from a right to deliver possession to an individual who enjoyed an equal right of possession *with* respondent—assuming that the wife had that right. Here we might possibly rest the matter, for the wife could claim no more than that she was in law entitled to the possession of the goods equally with her husband. The point now suggested, however, need not be decided, for she could not justify even a claim as great as that referred to   [3]   "The husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate; provided, however, that he cannot make a gift of such community personal property, or dispose of the same without a valuable consideration, or sell, convey, or encumber the furniture, furnishings, or fittings of the home, or the clothing or wearing apparel of the wife or minor children that is community, without the written consent of the wife" (Civ. Code, sec. 172). It would not seem that the act of respondent in depositing for storage the property here in question came within that part of this section following the word "provided." By that act he did not make a gift of the property or dispose of it without consideration. Surely, the question of consideration, within the meaning of the statute, was not involved in his storing the goods with appellant for safekeeping, and we therefore need not pause to determine whether his deposit for storage amounted to a disposal of them. The property consisted of furniture and fittings for the home, it is true, but in storing it respondent plainly did not "sell, convey or encumber it"

as the provision forbidding such acts without the written consent of the wife is intended by the statute. The inhibition of section 172 thus being put out of consideration, respondent dealt with the goods in storing them as if they were his separate estate, as allowed under the first part of the enactment. Not only does this seem plain upon the face of the section, but the supreme court has lately so declared, in effect (*Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22]). [4] Not only so, but if a cause of action for the recovery of the goods had arisen in favor of the community while appellant yet held them, the wife could not have maintained suit to enforce the claim, if respondent were still alive and were still her husband, and if the cause of action arose from no act of his (*Chance* v. *Kobsted,* 66 Cal. App. 434 [226 Pac. 632]). Under all these circumstances it seems futile to assert that appellant could deliver the goods to the wife, in the manner shown by the evidence presented here, and thus provide itself with a defense against this action brought by respondent. It would seem manifest that appellant is in the present action in no better situation than it would have been if the goods had been delivered under the same circumstances to an utter stranger to the community relationship existing between respondent and his wife. In support of the defense made by it, appellant cites *Schuler* v. *Savings & Loan Soc.,* 64 Cal. 397 [1 Pac. 479], *Tibbetts* v. *Fore,* 70 Cal. 242 [11 Pac. 648], *People* v. *Swalm,* 80 Cal. 46 [13 Am. St. Rep. 96, 22 Pac. 67], *Steele* v. *Marsicano,* 102 Cal. 666 [36 Pac. 920], and *Fennell* v. *Drinkhouse,* 131 Cal. 447 [82 Am. St. Rep. 361, 63 Pac. 734], but we think none of these cases bears upon the question presented.

The findings of the trial court show that respondent made written application to appellant for the storage of the goods which were placed in appellant's care; that the warehouse receipt issued when the goods were received by appellant recited that the responsibility of appellant under the storage arrangement should be limited to the sum of twenty-five dollars for each piece or parcel stored, or its contents, unless the value thereof was made known at the time of storage, when a higher rate for the service would be charged than was really exacted; that the value of certain packages which were stored was not made known to appellant at the time and that appellant never had notice of the value thereof;

and that appellant charged respondent a lesser rate of storage than it would have charged if a higher value than twenty-five dollars per package had been declared by respondent at the time the goods were stored. Not only did the warehouse receipt contain the recital above stated, limiting the liability of appellant, but the written application for storage made by respondent contained language practically identical in form, and in effect asked for a low rate of storage because of the low valuation placed on the packages. The trial court found, however, in its conclusions of law, that respondent was entitled to judgment for the full value of the articles included in the packages in question, and rendered judgment accordingly. It is now contended that the judgment was in this respect excessive. That is, it is insisted that the judgment, in so far as it was based upon the value of the packages mentioned, should have been limited to the sum of twenty-five dollars for each package, whereas the trial court found the actual value of each to be more than that sum and accordingly gave judgment for more. Respondent contends that appellant had no right to limit its liability in the respect mentioned, and that, therefore, the judgment was correct.

We first state the line of argument advanced by respondent, in effect, upon the interesting question thus presented. Section 2 of the Warehouse Act specifies what must be the contents of a warehouse receipt. Section 3 provides, in part: "A warehouseman may insert in a receipt, issued by him, any other terms and conditions, provided that such terms and conditions shall not— . . . in anywise impair his obligation to exercise that degree of care in the safekeeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own." This language imports that a warehouseman may not by his warehouse receipt attempt to limit his liability for a failure to exercise at least ordinary care. [5] Therefore, did the delivery of the goods in question here to the wife of respondent show a failure upon the part of the warehouseman to exercise that degree of care in their safekeeping? In other words, did the breach of the bailee's agreement to deliver only to respondent, or upon his order, amount to negligence? There seems, argues respondent, in effect, to be but one answer to these questions. The exact point was before the court in

*Rex* v. *James,* 62 Tex. Civ. App. 238 [131 S. W. 248], and it was there held that a delivery of goods to a person not entitled to them under the warehouse receipt issued in that case was negligence entitling the holder of the receipt to recover.   In truth, the principle here involved was before this court in a comparatively recent case, the only difference being that the bailee there was not a warehouseman.   An automobile had been placed in a public garage under an agreement of the keeper of the place to exercise ordinary care and prudence in the keeping and preservation of it. The evidence was that the car was delivered by the bailee to a person other than the bailor, but it was contended that this proof did not show a want of the exercise of ordinary care.   In disposing of the contention this court remarked: "It surely cannot be said that ordinary care is exercised in the keeping of an automobile under such a contract as was made here if that contract is breached by a delivery of the car to a stranger.   We have no doubt that the trial court, after finding that the contract required only the exercise of ordinary care by respondent, intended the finding that the contract had been breached as a finding that such care had not been exercised.   At any rate, to our minds, the finding so operates.   It would be difficult to imagine a stronger case of lack of exercise of such care" (*Mchesy* v. *Mission Garage,* 60 Cal. App. 275 [22 Pac, 643]).   **[6]**   The act of appellant which is the basis of the present action having been an act of negligence, it remains to inquire, says respondent, how its attempt to limit its liability to twenty-five dollars per package of the goods stored operated as an attempt to protect itself from acts of that character.   On this head a part of the language used in a decided case is apposite, says respondent, although the court rendering the opinion declared that the language referred to was not necessary to the decision.   The action was against a warehouseman and was brought to recover the value of a handbag which had been stored with him, but upon which he had placed a value of ten dollars in the warehouse receipt or coupon issued by him.   The court said: "I think that the clause of the coupon which attempted to limit the liability of the defendant impaired its obligation to exercise that degree of care in the safekeeping of the goods intrusted to it which a reasonably careful man would exercise in regard to similar goods of his

own, and hence was a condition which the defendant had not the legal right to insert in the coupon.and was void. It is a matter of common knowledge that the value of a handbag and its contents carried by a person traveling is often many times $10, and manifestly a condition in a receipt which limits the liability of the bailee to so small a sum weakens his sense of obligation to exercise that degree of care which he would be likely to exercise if he knew that he would be held liable for the full value of the parcel stored in the event of its loss'' (*Healy* v. *New York Cent. R. Co.*, 153 App. Div. 516 [138 N. Y. Supp. 287]). The decision was affirmed by the court of appeals of New York without opinion. Upon these premises it is argued that the judgment of the trial court, in the respect which is now under examination was correct.

The argument of appellant upon the question is now in effect to be stated. Section 2175 of the Civil Code reads: ''A common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or willful wrong of himself or his servants.'' It will be observed that this enactment is like the inhibitive portion of section 3 of the Warehouse Act. Decisions based upon section 2175 of the code are therefore of interest in measuring the effect of the similar provision of the Warehouse Act. The supreme court has several times been called upon to solve questions under the former which are akin to the one here presented under the latter. In one of the cases a common carrier had contracted to transport certain horses over its lines by means of a car which was chartered for the purpose by the owner of the horses at a certain rate. The shipper presented to the carrier his written ''request'' for the service to be rendered and in it he stated the value of each of the horses to be twenty dollars. Each was in fact worth much more than that sum. The ''request'' stated that the shipper desired the execution of a particular form of contract for the service to be rendered, which specified a lower shipping rate than that which would have been charged but for the low valuation placed on the horses. The contract between the parties was upon the form requested. The instrument recited that in case of the loss or injury of the animals through the gross negligence of the carrier the amount to be by their

owner "claimed . . . shall be adjusted on the basis of value at the time and place of shipment not exceeding the declared value" set forth in the "request," "and on which declared value the rate or rates of transportation hereinbefore named by the first party [the carrier] are based." There were other clauses of the contract which strengthened, amplified and made more certain and positive the substance of the matter just quoted. Two of the horses were lost in transit through the gross negligence of the carrier, and the shipper brought suit for damages. The jury, after a refusal of the trial judge to instruct that the damages found, if any, must be limited to the sum of twenty dollars for each animal, rendered verdict for a larger sum. In reversing the judgment the supreme court said: "Now, to examine the contract under the terms of section 2175 of the Civil Code, to see if it comes within its prohibition. That section prohibits the carrier from entering into any contract in anticipation of gross negligence exonerating itself from liability therefor. Undoubtedly, a contract which attempted to relieve the carrier from liability for gross negligence, or attempted to fix a liability for only half the actual value of the property carried, or any other proportion less than such actual value, would be obnoxious to the prohibition of the section and void. But the contract in question here does not attempt to relieve the carrier from liability for the actual value of the property shipped, nor does it provide for any partial exemption from liability; nor does it provide for exemption from responsibility at all. On the contrary, the carrier assumes full responsibility for loss or injury to the property occasioned through its gross negligence to the full extent of the actual value of the property as declared by the shipper, and which valuation, by the contract between them, was agreed to be its actual valuation for all purposes. As to these purposes, it is not correct to assume that the special contract was made solely in anticipation of liability, or that liability was the principal subject-matter of the contract. It was not entered into with a view of providing solely for exemption, nor was that by any means its contemplated purpose. While it is true that the actual value of property may in fact be in excess of an agreed valuation in a contract, and as to that excess it may be said that the carrier is exonerated from

liability, this does not render the contract, otherwise fairly entered into fixing the agreed valuation, invalid. If to that extent exemption may be said to result in some instances under an agreed valuation, it only follows indirectly, because it is not the main or chief object of the contract to attain it. The primary purpose of this contract was, as the rates of transportation charged by the carrier were measured by the valuation of the property shipped, to fix an agreed valuation of the horses in question as a basis upon which freight rates should be charged and paid, on condition that in case of loss the responsibility of appellant should be measured by such agreed valuation. The contract is one in which the valuation of the property was agreed to for the purpose of fixing transportation charges and as measuring the responsibility of appellant. It was not a contract limiting liability. It was a contract dealing primarily with value—the value of the horses shipped. That was agreed to, and, of course, the agreed valuation must be deemed to be the actual valuation of the property—its actual valuation for all purposes of the contract; and as appellant assumed responsibility for loss to the full extent of such valuation there is no room for claiming that the contract was an attempt to exonerate it from the liability which the statute imposed. On the contrary, it assumed under it full liability for the actual value as that actual value was agreed on. Under this view of the contract we cannot see how it violates the section of the code relied on. That section, while it prohibits contracts relieving the carrier from liability for the value of property entrusted to it for carriage and lost through its gross negligence, was not intended to limit the right of contract between shipper and carrier as to what that value may be. It prohibited only the making of a contract limiting liability. The limitation of liability necessarily imports a responsibility less than full responsibility. Full responsibility under the statute for the loss of the property carried could not exceed its actual value, and while under the statute a carrier cannot by contract exonerate itself from liability for such value, there is nothing in the statute which prohibits the parties by contract from determining freely in advance what the actual value of such property is as the measure of the responsibility of the carrier when it attaches"  (*Donlan Bros.* v. *Southern Pac. Co.*,

154 Cal. 763 [12 Ann. Cas. 1118, 11 L. R. A. (N. S.) 811, 91 Pac. 603]). Appellant also cites, as based upon the same doctrine, *Michalitschke* v. *Wells, Fargo & Co.,* 118 Cal. 683 [50 Pac. 847], *Merrill* v. *Pacific Transfer Co.,* 131 Cal. 582 [63 Pac. 915], and *Mering* v. *Southern Pacific Co.,* 161 Cal. 297 [119 Pac. 80].

Leaving now the argument of appellant, we do not pause to consider whether all of the three cases last cited are in point, as the language of the opinion in *Donlon Bros.* v. *Southern Pacific Co.* is so explicit as to have nothing to be desired in furtherance of an endeavor to ascertain the rule in this state upon the subject treated so exhaustively in that case. A vigorous dissent from the conclusion reached in the opinion, upon views similar to those expressed in *Healy* v. *New York Cent. R. Co., supra,* was filed by one of the members of the court, but the principle announced has ever since remained the law of the state. The case was cited with approval in *Mering* v. *Southern Pacific Co., supra,* and was followed in *Reeder* v. *Wells Fargo & Co.,* 14 Cal. App. 790 [113 Pac. 342], *Olcovich* v. *Grand Trunk Ry. Co.,* 179 Cal. 332 [176 Pac. 459], and *Crenshaw Bros.* v. *Southern Pacific Co.,* 40 Cal. App. 603 [181 Pac. 252]. It was mentioned in *Walther* v. *Southern Pacific Co.,* 159 Cal. 769 [37 L. R. A. (N. S.) 235, 116 Pac. 51]. The present controversy would seem to be ruled by *Donlan Bros.* v. *Southern Pacific Co.* Respondent endeavors to escape the principle stated in that case by means of a section of the Warehouse Act which reads: "This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it" (Sec. 57). The act has been adopted in a number of the states, and respondent cites, along with *Healy* v. *New York Cent. R. Co., supra,* cases from different jurisdictions which it is contended adhere to a rule in direct conflict with that announced by the carrier cases decided by the supreme court of this state and which are above listed. We have not halted to determine to what extent the courts of other states, in construing the provisions of their laws identical with or similar to section 3 of our Warehouse Act, have aligned themselves together. We have not endeavored to ascertain to what extent they have attempted to make uniform, or have succeeded in

making uniform, the law upon such a question as arises here. In view of the decision in *Donlon Bros.* v. *Southern Pacific Co., supra,* we have no interest in that question. The case is directly in point and applies in principle to section 3 of the Warehouse Act equally as it does to section 2175 of the Civil Code. If, because of the language of section 57 of the Warehouse Act, a rift is to be made in the law of bailments in this state, so that one rule shall obtain under section 3 of that act and an utterly different rule shall apply under section 2175 of the Civil Code, the chasm can be created only by the supreme court. We are bound by the line of decision laid by that tribunal. In view of the law as there expressed, the question as to how far it is necessary to go to satisfy the terms of section 57 of the Warehouse Act is a question for our court of last resort. In our opinion the contract limiting the liability of appellant to twenty-five dollars per package of the goods stored by respondent with it was not invalid as being within the inhibition of section 3 of the Warehouse Act. This view requires a modification of the judgment.

Other points are made by appellant, but they are either concluded by our views upon questions which we have above determined, or they fall of their own weight.

The judgment is modified by striking therefrom the figures $759.97, and inserting therein in lieu thereof the figures $375.85. As so modified the judgment is affirmed.

Finlayson, P. J., and Craig, J., concurred.