FERVEL TOPEK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SARAH TOPEK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11718, 11719. Promulgated October 27, 1947.

*J. L. Lockett, Esq.*, for the petitioners.
*D. Louis Bergeron, Esq.*, for the respondent.

### OPINION.

JOHNSON, *Judge*: The Commissioner determined a deficiency in the income and victory tax for the calendar year 1943 of petitioner Fervel Topek (Docket No..11718) in the amount of $811.80, and of petitioner Sarah Topek (Docket No. 11719) in the amount of $811.80. The two proceedings, being identical as to issues and sums involved, were consolidated.

Originally, petitioners had three assignments of error, but one of them, the third, related to a deduction for depreciation, was withdrawn by petitioners, leaving only two, as follows:

(1) Petitioners assail the Commissioner's disallowance of $4,412.02 bonus paid as additional compensation for services to D. A. Topek.

(2) Petitioners assail the Commissioner's disallowance of $4,057.02 bonus paid as additional compensation for services to Max Rosen.

The facts were stipulated, which, with the exhibit attached thereto, we adopt as our findings and from which it appears:

Petitioners are husband and wife, residing in Houston, Texas, and under the community property laws of Texas each filed a separate income tax return, on the accrual basis of accounting, for the calendar year 1943 with the collector of internal revenue for the first district of Texas.

Petitioners are engaged in the wholesale produce business and during the year 1943 employed more than eight employees, among whom was D. A. Topek, their son, and Max Rosen, their son-in-law, both serving in key positions. The compensation of the son and the son-in-law under their contracts of employment was a drawing account of $40 a week each, plus an additional bonus, the amount to be determined and based on the annual net profits of the business. For years it had been petitioners' custom to wait until near the end of the year, when their approximate net income was known, before determining the bonuses to be paid to key employees. Profits of the business for 1942 were approximately $48,000, and for 1943 were in excess of $80,000. On or about December 1, 1943, it was agreed that the bonus for 1943 would be $11,000 for D. A. Topek and $8,500 for Max Rosen, and on December 3, 1943, petitioners made application to the Dallas, Texas, regional office of the Salary Stabilization Unit for permission to pay bonuses to these two parties for such amounts. The application was in prescribed form and based upon petitioners' contractual obligation to pay same.

On February 1, 1944, the Dallas regional office approved the application in part only, to wit: Bonus payment of $6,587.98 was approved for D. A. Topek and $4,442.98 for Max Rosen, and petitioners were directed not to pay the balance of the bonus. Shortly thereafter the bonuses for the amounts approved were paid. On February 10, 1944, petitioners applied for review of the ruling by the regional office and the case was forwarded to the Deputy Commissioner, Salary Stabilization Unit, Washington, D. C., for review. No decision on their appeal having been received on March 15, 1944, petitioners filed their income tax returns, wherein they deducted the amounts of the bonuses paid as allowed by the regional office, and attached thereto a rider reading as follows:

This income tax return is subject to change pending approval of increased bonuses for 1943 for two employees by the Salary Stabilization Unit at Washington, D. C.

On the same date the son and the son-in-law filed their individual income tax returns on the cash receipts and disbursements basis and reported their salaries and the amounts of bonus paid them.

On March 16, 1944, petitioners, by their attorney, again wrote the Deputy Commissioner of the Salary Stabilization Unit in Washington about their appeal and finally, on April 26, 1944, the Deputy Commissioner, in a letter to petitioners, modified the February 1, 1944, ruling of the regional office and allowed the full amount of the bonus, to wit, $11,000 to D. A. Topek and $8,500 to Max Rosen; whereupon petitioners, promptly upon receipt of such authority, paid the balance of the bonus due, to wit, the additional sum of $4,412.02 to D. A. Topek and $4,057.02 to Max Rosen, and thereupon petitioners each filed amended income tax returns for 1943, wherein the additional bonuses paid were reflected in arriving at the net income shown therein. The son and son-in-law then also filed amended income tax returns for 1943 and reported the said additional amounts paid them.

In his deficiency notice to petitioners, respondent disallowed the deduction of $4,412.02 paid to D. A. Topek and $4,057.02 paid to Max Rosen on the sole ground that such additional bonus payments were not paid within two and one-half months after the close of petitioners' taxable year, and therefore that such deductions were not allowable under the provisions of section 24 (c) of the Internal Revenue Code.

Having accrued the full amount of the salary and bonus payable to the son and son-in-law for 1943 in December of that year, petitioners applied to the Salary Stabilization Unit for approval, and refrained from payment of the part here in controversy until approval was granted on April 26, 1944, after decision of an appeal from a contrary ruling in February. While the full salary and bonus would be normally deductible under section 23 (a), Internal Revenue Code, the Commissioner disallowed deduction of the part not approved, paid, or reported by March 15, 1944, by virtue of section 24 (c),[1] set out below. To warrant this disallowance it must

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

    *      *      *      *      *      *      *

(c) UNPAID EXPENSES AND INTEREST.—In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued—

(1) If such expenses or interest are not paid within the taxable year or within two and one half months after the close thereof; and

(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(3) If, at the close of the taxable year of the taxpayer or at any time within two and one-half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).

appear that all three of the conditions prescribed by that section coexist, *Michael Flynn Mfg. Co.*, 3 T. C. 932; *P. G. Lake, Inc.*, 4 T. C. 1; *McDuff Turner*, 5 T. C. 1261. As the amounts in controversy were not paid within two and a half months after the close of 1943, the first condition is met. As the recipients of these amounts reported income on the cash basis, they could not properly include such amounts in their income for 1943, while petitioners, on the accrual basis, should take the deduction in that year—thus the second condition is met. There remains for decision whether or not the third condition is met, to wit: Were the taxpayer and the payee "persons between whom losses would be disallowed under section 24 (b)?"

Persons between whom losses are disallowed under section 24 (b) as here pertinent are, *inter alia*, declared to be "(A) Between members of a family, as defined in paragraph (2) (D)." Paragraph (2) (D) reads as follows:

(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *

To meet the requirement of subdivision (3) of section 24 (c), the family relationship of the employee the payment to whom is in question must fall within the category above defined, otherwise section 24 (c), invoked by the respondent, is not applicable.

Max Rosen is the son-in-law of petitioners. A son-in-law of an individual is not his lineal descendant and therefore is not included within the meaning of paragraph (2) (D) of section 24 (b). See *Walter Simister, Jr.*, 4 T. C. 470, in which case the Commissioner made no claim that the son-in-law of the taxpayer was a member of his family within the meaning of said subsection. We sustain petitioners' second assignment of error and hold deductible the additional compensation paid Max Rosen.

Petitioner's first assignment of error relates to respondent's disallowance of the deduction for additional compensation paid to their son, D. A. Topek, who is a lineal descendant of petitioners, and hence in respect of the payment to him all conditions of section 24 (c) are literally met.

Petitioners contend, however, that section 24 (c) of the code was "modified and an exception raised thereto" by the subsequent Act of Congress (Public Law 729, 77th Cong.) entitled "An Act to amend the Emergency Price Control Act of 1942," to the extent that deductions will not be disallowed where the delay in making payment is due to the requirements of the later act and regulations and orders issued thereunder.

The only legal authorities cited by petitioners in support of this contention are brief quotations from two opinions of the Supreme Court enunciating the general rule as to repeal by implication. The quotations in petitioners' brief are these:

1. We are not unmindful of the rule that repeals by implication are not favored. But there is another rule of construction equally sound and well settled which we think applies to this case. Stated in the language of this court in *United States* v. *Tynen,* 78 U. S. (11 Wall.) 88, 92, it is this: "When there are two acts on the same subject, the rule is to give effect to both if possible. But if the two are repugnant in any of their provisions, the latter Act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first." [*District of Columbia* v. *Hutton,* 143 U. S. 18.]

2. There are two well-settled categories of repeals by implication: (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) (not pertinent) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. (It is in the first of those two categories that the law here involved falls.) [*Posadas* v. *National City Bank of New York,* 296 U. S. 497.]

Petitioners do not attempt to apply the facts of the cited cases to this one, as they are wholly different and there is no existing analogy, and it is only the general rule of interpretation therein declared upon which petitioners rely.

Applying this rule of interpretation, we are called upon to decide whether section 24 (c), Internal Revenue Code, and the Act to amend the Emergency Price Control Act of October 2, 1942, Public Law 729, 77th Cong., vol. 56, part 2, Stat. at Large 765 (which for brevity we shall call Price Control Act), are two acts upon the same subject and whether certain provisions in the two acts are repugnant and in irreconcilable conflict. We think not. The two acts differ in their content and purpose and relate to different subjects, and there is no provision in either act in conflict with any provision of the other.

Section 24 (c), which we have already analyzed, is a part of our permanent income tax law, while the Price Control Act was a temporary war measure designed to prevent inflation. Among other provisions it forbade increase in wages or compensation unless permission was first obtained, and in furtherance of its enforcement it prescribed that "any wage or salary payment in contravention thereof should be disregarded by the executive departments and other government agencies," and by a regulation issued thereunder "the Commissioner of Internal Revenue was granted authority to determine the validity of certain wage and salary payments for the purposes of the stabilization program." And under T. D. 5295 the Commissioner of Internal Revenue prescribed stabilization regulations conforming to the act and the regulations of the Economic Stabilization Director.

Unquestionably the Price Control Act prevented petitioners from making payment of the employees' compensation in question until approval was had under its terms, provisions, and regulations, which permission was not granted until April 26, 1944, whereas section 24 (c) required that such payments be made on or before March 15, and this is the basis of petitioners' contention that the two laws are in conflict.

But what provisions of the two laws are in conflict? One says the compensation, to be deductible, must be paid on or before March 15, the other has no time limit, it merely provides that approval must be had *before* payment is made. What conflict, irreconcilable or otherwise, is there in these, the essential and pertinent, features of the two laws here, involved? It is reasonable to assume that if the taxpayer uses due diligence in seeking authority for the increase and the Government agency does likewise in passing upon it, permission may be obtained and payment made by March 15, and in such event no one would or could contend that there was a conflict in the two laws. It is apparent, therefore, that whether the taxpayer can make payment before or after March 15 is dependent, not on any provision of the Price Control Act, but on the seasonableness of the time within which he makes application so to do and on the Government agency in passing upon same. In this case it was not the *existence* of the Price Control Act, but the *delay* in determining petitioners' rights thereunder which prevented payment by March 15 as required by section 24 (c).

Whether this delay was occasioned by lack of diligence on the part of the petitioners or of the Government is unnecessary for us to decide. If it be the latter, this Court is not the forum to adjudicate that question and its consequences. Indeed, petitioners do not predicate their argument on the ground that the Government agency was at fault, but specifically their claim is "that its [Price Control Act] requirements in respect of making payment of compensation for services, must be recognized as predominant over Sec. 24 (c), and requiring that there be read into Sec. 24 (c) an exception applicable to cases where delay in payment is attributable to the requirements of the Act of 1942."

Petitioners cite no authority for the proposition "requiring that there be read" into an act "an exception applicable to cases where the delay in payment is attributable thereto."

To repeal by implication the conflicting provisions of a previous act causes such provision to be ineffective in all cases, not just those in which hardship may result. The doctrine of repeal by implication is based on law, not equity. Repeals by implication are uniform, not sporadic nor exceptional.

The principle that repeal of one statutory provision by another will not be implied unless there is positive repugnancy between them applies

especially to revenue laws. *Graham & Foster* v. *Goodcell*, 222 U. S. 409.

Finding no conflict in the provisions of the two laws in question, we hold that section 24 (c) is unaffected by the Price Control Act.

The payment of $4,057.02 to Max Rosen is deductible, but the sum of $4,412.02 paid to D. A. Topek is not deductible.

*Decisions will be entered under Rule 50.*