HARRY T. JOHNSON, JR., and JEANNE E. JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 6698-76.
United States Tax Court
T.C. Memo 1977-377; 1977 Tax Ct. Memo LEXIS 63; 36 T.C.M. (CCH) 1531; T.C.M. (RIA) 770377; October 31, 1977, Filed Harry T. Johnson, Jr., and Jeanne E. Johnson, pro se. Lewis R. Carluzzo, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: Respondent determined a deficiency in petitioners' 1974 Federal income taxes in the amount of $2,339.47. After a concession by petitioners as to one adjustment made by the Commissioner, the only issue remaining for decision is whether petitioners may treat an amount of $6,580 as foreign income exempt from tax under section 911, I.R.C. 1954. [1] Petitioner Jeanne E. Johnson received that amount in 1974 but it related to services performed by her in 1968 and 1969. She will sometimes hereinafter be referred to as petitioner. All the facts have been stipulated. Petitioners, Harry T. Johnson, *65 Jr., and Jeanne E. Johnson, are married individuals residing in Arlington, Virginia, which was their place of residence at the time the petition was filed. Their 1974 joint Federal income tax return was filed with the Internal Revenue Service, Memphis, Tennessee. Petitioners were married to each other in 1972. From 1965 until 1972, petitioner Jeanne E. Johnson, a United States citizen, was a resident of Vietnam. During the years 1968 and 1969, she was employed in Vietnam by RMK-BRJ, a large conglomerate engaged in construction activities. It was stipulated that while so employed she was entitled to exclude from gross income pursuant to section 911 (exclusion for earned income from sources without the United States) all amounts received from RMK-BRJ in 1968 and 1969. Her total income in 1968 and 1969 was $9,205.97 and $11,180.30, respectively. Petitioner utilized the cash receipts and disbursements method of accounting in computing her taxable income for the years 1968 and 1969. In 1969, Jeanne filed a civil rights complaint against RMK-BRJ with the Equal Employment Opportunity Commission (EEOC), alleging wage discrimination on the basis of sex. The claim was eventually *66 resolved by a settlement under which she received $6,580 in January 1974. Petitioners Jeanne and Harry computed their taxable income for 1974 on a cash basis. Along with the Johnsons' Form 1040 return for the year 1974, Jeanne filed a Form 2555 (Exemption of Income Earned Abroad). In her Form 2555, Jeanne stated that $6,580 was received in 1974 from RMK-BRJ in settlement of an EEOC suit on her behalf for wages earned but not paid during her 1968 and 1969 work in Vietnam. Petitioners excluded the amount of the settlement from their 1974 taxable income, claiming that the settlement proceeds were properly excludable under section 911 as compensation received for personal services performed abroad. Because the money was not received by petitioner until 1974, whereas the services for which the 1974 payment was made were performed in 1968 and 1969, respondent determined that the 1974 settlement proceeds did not qualify for the section 911 exclusion. Respondent relies upon the express language of section 911(c)(4), which provides: (4) Requirement as to time of receipt.--No amount received *67 after the close of the taxable year following the taxable year in which the services to which the amounts are attributable are performed may be excluded under subsection (a). A more complete excerpt from section 911 is set forth in the margin. [2]
*68 The issue to be decided is whether section 911 allows petitioners to exclude the settlement proceeds from their 1974 income despite the apparently clear prohibition contained in section 911(c)(4). There is no question that the amounts in issue were received after the period specified in the statute. Petitioners seek to avoid the application of section 911(c)(4) by noting that the settlement amount would have been fully excluded from Jeanne's 1968 and 1969 income were it received in the form of higher wages for those years, rather than by means of a settlement -- delayed through no fault of petitioners -- of an EEOC discrimination action. Petitioners contend that the remedial purpose of Title VII of the Civil Rights Act of 1964 [3] requires that Jeanne's settlement be given the same exemption from income taxation that additional wages would have enjoyed in the absence of the 1968 and 1969 discrimination. Such a result is necessary, according to petitioners, to avoid a "chilling effect" on the commencement of Title VII sex discrimination suits. [4]
*69 While we sympathize with petitioners, there is no basis in the statute, its legislative history or its purpose to justify the exception to the mandate of section 911(c)(4) that petitioners are seeking. Section 911(c)(4) is clear on its face that no compensation received more than one year after the year in which the underlying services are performed may be excluded from income under section 911. See also, section 1.911-2(d)(2), (3) Income Tax Regs.; Rev. Rul. 76-191, 1976-1 C.B. 201. Thus, we would ordinarily be quite hesitant to infer an unwritten exception broadening the coverage of the statute in the absence of clear Congressional intent or another compelling reason to do so. See generally, 1 Mertens, Law of Federal Income Taxation, Sections 3.02-3.04, pp. 4-13. This is especially true in the case of a statute such as section 911 that provides an exemption from taxation. See generally, id., Section 3.07, pp. 16-18, and cases cited therein. The legislative history of section 911(c)(4) gives no comfort to petitioners. The technical explanations in both the House *70 and Senate Committee Reports accompanying the Revenue Act of 1962, Public Law 87-834, which first enacted section 911(c), made it clear by way of an example that no exceptions to the operation of section 911(c)(4) were intended: [An] amount received after the close of the taxable year 1965 which is attributable to services performed during the taxable year 1964 will not satisfy the requirement as to receipt of section 911(c)(4) and, therefore, will in no event be excludable under section 911(a).(Emphasis added.) H. Rept. No. 1447, 87th Cong., 2d Sess. (1962), p. A87, 1962-3 C.B. 405, 585; S. Rept. No. 1881, 87th Cong., 2d Sess. (1962), p. 234, 1962-3 C.B. 707, 938. The primary concern that led to the passage of section 911(c)(4) was a Congressional belief that an exclusion from income for deferred compensation payments was not necessary to achieve the objectives of section 911. The Committee Reports state that -- The purpose of the [section 911] exclusion is to provide a special inducement for American citizens or residents to hold employment abroad. Your committee sees no reason, however, to provide this special inducement long after the *71 period in which the employment occurred. H. Rept. No. 1447, supra at 55, 1962-3 C.B. at 459; see also S. Rept. No. 1881, supra at 75, 1962-3 C.B. 781. In the instant case petitioner received her settlement long after she terminated her employment in Vietnam. Thus, like more traditional forms of deferred compensation, there appears to be no policy reason in terms of encouraging acceptance of foreign employment to give tax-favored treatment to the settlement. [5]
Finally, we are unable to agree with petitioners' contention that the passage of Title VII of the Civil Rights Act of 1964 was intended to affect the otherwise clear rule of section 911(c)(4). Repeals by implication are not favored; a subsequent statute will not be construed to modify or create an exception in a prior statute unless the two statutes *72 are wholly irreconcilable. See, e.g., Topek v. Commissioner,9 T.C. 763.This is particularly true of provisions in the Internal Revenue Code when it is urged that the modification occurred in a non-revenue statute considered by Congressional committees other than those charged with the responsibility of proposing or reviewing revenue measures. There is no conflict between Title VII of the Civil Rights Act of 1964 and section 911(c)(4). The legislative history of Title VII is devoid of any reference to the income tax consequences of recoveries under the act. See H. Rept. No. 914, 88th Cong., 2d Sess. (1963), 1964-2 U.S. Code Cong. and Adm. News 2355, 2401-05. Furthermore, the remedial purposes of the Civil Rights Act of 1964 will not be thwarted if petitioner's settlement is subjected to tax because of section 911(c)(4). Rather, the remedies provided by the Civil Rights Act are merely rendered less favorable than they otherwise would be in the absence of section 911(c)(4). Finally, an incentive still exists for petitioner and others similarly situated to prosecute their *73 civil rights claims, because even after paying the tax petitioners are better off with the settlement than they would have been had Jeanne failed to file a claim with the EEOC.This is not the degree of conflict between statutes necessary for us to find a Congressional intent to amend by implication section 911(c)(4) with respect to civil rights recoveries. Cf. Topek v. Commissioner,supra,9 T.C. at 768-769, citing Graham & Foster v. Goodcell,282 U.S. 409.
While the result of applying the literal language of section 911(c)(4) to petitioner may appear to be harsh, petitioners are in effect asking us to create an equitable exception to the statute. This we are not empowered to do. The proper forum for redress of this possible inequity lies in Congress. Cf. Funk v. Commissioner,29 T.C. 279, 297, remanded on another ground, 262 F. 2d 727 (C.A. 9). The entire amount of the settlement proceeds must be included in petitioners' 1974 income. Decision will be entered for the respondent. Footnotes
1. Unless stated otherwise, all section references are to the Internal Revenue Code of 1954, as in effect during the year in issue. Portions of section 911↩ not relevant to the instant case have been amended by the Tax Reform Act of 1976, Public Law 94-455 and the Tax Reduction and Simplification Act of 1977, Public Law 95-30, for taxable years beginning after December 31, 1976.
2. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule.--The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: (1) Bona fide resident of foreign country.--In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States * * * which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c). * * *
(b) Definition of Earned Income.--For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered * * *. (c) Special Rules.--For purposes of computing the amount excludable under subsection (a), the following rules shall apply: * * *
(4) Requirement as to time of receipt.--No amount received after the close of the taxable year following the taxable year in which the services to which the amounts are attributable are performed may be excluded under subsection (a).↩
3. Title VII, Civil Rights Act of 1964, Public Law 88-352, 42 U.S.C. sec. 2000e↩, as amended. 4. At trial petitioner suggested that for section 911 purposes there is a distinction between wages and amounts received as "restitution" of earned but unpaid wages, and that section 911(c)(4) allows exclusion from income of the latter type of payment even if received after the period specified in the statute. Petitioners fail to cite, and we have been unable to find, any authority to support the proffered distinction. In fact, the pattern of the statute suggests that such a distinction does not exist. The section 911 exemption applies only to "earned income" received from services performed abroad. Section 911(a). Section 911(c)(4) provides a special rule for purposes of computing the amount excludable under section 911(a). Section 911(c)(4) makes nonexcludable certain income otherwise excludable depending on the time of its receipt: Noamount received after the close of the taxable year * * * may be excluded under subsection (a). (Emphasis added). The "no amount" language of the subsection clearly refers to all of the various types of earned income that could have been excluded under section 911(a). Thus, petitioners' attempt to label the settlement "restitution" rather than wages is futile once it is conceded that regardless of the label, the settlement proceeds are "earned income". There is no dispute that the settlement amount is earned income as defined in section 911(b).Indeed, if it were not "earned income", there would be no basis for the claim to exclusion in the first place under section 911(a)↩.
5. In fact, Jeanne apparently was willing to accept foreign employment in 1968 and 1969 at the salary level she actually received without any firm expectation of receiving additional wages from settlement of a wage discrimination suit. The final settlement was not completed until 1974, more than four years after the years involved.↩