## GRAHAM v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8497.

Circuit Court of Appeals, Ninth Circuit.

March 4, 1938.

H. B. Jones and Robert E. Bronson, both of Seattle, Wash., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Respondent determined that, in respect of petitioner's income taxes for 1928 and 1929, there were deficiencies of $1,049.92 and $514.20, respectively. Petitions for redetermination were filed, petitioner claiming that for 1928 there was no deficiency, and that for 1929 there was an overpayment of her tax. The Board of Tax Appeals decided[1] that for 1928 there was a deficiency of $230.83, and that for 1929 there was

[1] There were two decisions, one relating to 1928, the other to 1929.

neither a deficiency nor an overpayment. Petitioner seeks reversal.

In 1928 and 1929 petitioner and her husband resided in the State of Washington, and petitioner's husband practiced in that State the profession of architect. The Board found that petitioner had no separate income, but that in 1928 she and her husband had net community[2] income of $82,577.64 "derived from the professional architectural services" of petitioner's husband, and that in 1929 they had net community income of $96,402.21 "realized by [petitioner's husband] from the practice of his profession as an architect." It was and is conceded that one half of said community income was income of petitioner, that the other half was income of her husband, and that she and her husband were entitled to, as in fact they did, make separate returns thereof, each returning one half. Poe v. Seaborn, 282 U.S. 101, 110, 51 S.Ct. 58, 75 L.Ed. 239. The question presented is whether petitioner's half of said community income was "earned income," within the meaning of section 31 of the Revenue Act of 1928, 45 Stat. 804, 26 U.S.C.A. § 25 note, which reads as follows:

"Sec. 31. Earned Income Credit.

"(a) Definitions. For the purposes of this section—

"(1) 'Earned income' means wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, a reasonable allowance as compensation for the personal services actually rendered by the taxpayer, not in excess of 20 per centum of his share of the net profits of such trade or business, shall be considered as earned income.

"(2) 'Earned income deductions' means such deductions as are allowed by section 23 for the purpose of computing net income, and are properly allocable to or chargeable against earned income.

"(3) 'Earned net income' means the excess of the amount of the earned income over the sum of the earned income deductions. If the taxpayer's net income is not more than $5,000, his entire net income shall be considered to be earned net income, and if his net income is more than $5,000, his earned net income shall not be considered to be less than $5,000. In no case shall the earned net income be considered to be more than $30,000.

"(b) Allowance of Credit. In the case of an individual the tax shall be credited with 25 per centum of the amount of tax which would be payable if his earned net income constituted his entire net income; but in no case shall the credit allowed under this subsection exceed 25 per centum of his normal tax plus 25 per centum of the surtax which would be payable if his earned net income constituted his entire net income. This credit shall be in addition to all other credits against the tax."

Respondent concedes that petitioner's husband's half of their aforesaid community income was "earned income," within the meaning of section 31, but contends that petitioner's half was not "earned income." This contention, which the Board upheld, must be rejected. All of said community income—petitioner's half as well as her husband's half—was "received as compensation for personal services actually rendered" and was, therefore, within the statutory definition of "earned income." McLarry v. Commissioner, 5 Cir., 30 F.2d 789.

Respondent says that the phrase "personal services actually rendered," in the first part of section 31 (a) (1), means personal services actually rendered by the taxpayer. Thus we are asked to read into the quoted phrase a limitation which it does not contain. This we decline to do. We think that, if Congress had intended such a limitation, it would have expressed that intent. It did, in the same paragraph, where limitations were intended, express such intent by using the words "by him" and "by the taxpayer." No such words were used in the first part of section 31 (a) (1). We conclude, therefore, that no limitation was there intended.

[2] In Washington, property acquired after marriage by either husband or wife or both, unless acquired by gift, bequest, devise, descent or inheritance, is community property. Remington's Revised Statutes, §§ 6890–6892.

 Even though "earned income" were defined as income received as compensation for personal services actually rendered by the taxpayer, still petitioner's half of the above-mentioned community income would be within the definition. The Board found that said community income was received as compensation for professional services rendered by petitioner's husband. Respondent assumes, erroneously, that these services were rendered by petitioner's husband individually, on his own account and for himself alone, thus assuming as a fact that which, in Washington, is a legal impossibility. When a married man residing in Washington practices a profession or engages in any gainful occupation or activity, he does so as the agent of a marital community consisting of himself and his wife. Poe v. Seaborn, supra. He cannot do so in any other way or in any other capacity. Services rendered by him are actually rendered by the community, that is to say, by him and his wife, equally. So, in this case, petitioner was, no less than her husband, the actual renderer of the services for which they received as compensation the community income above referred to.

That petitioner did not personally participate in the professional labors of her husband is immaterial. One may actually render a personal service without personally performing the acts constituting the service. Otherwise a partnership acting through one of its members, or a principal acting throught an agent, could not actually render a personal service, the truth being, of course, that such services can be and, in countless instances, are actually so rendered.

 Respondent cites Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, and Thomas v. Perkins, 301 U.S. 655, 659, 57 S.Ct. 911, 912, 81 L.Ed. 1324, to the effect that, in the absence of language evidencing a different purpose, a federal income tax act "is to be interpreted so as to give a uniform application to a nationwide scheme of taxation," and that "state law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law," all of which is true, but not here applicable. There is here no conflict between the state law and the federal taxing act, no attempt by the former to control the operation of the latter. The federal act defines "earned income" as including compensation for personal services "actually rendered," but it does not define the term "actually rendered." Whether the personal services here involved were actually rendered by petitioner's husband alone, as claimed by respondent, or were actually rendered by the marital community, as claimed by petitioner, is a question to which the federal act provides no answer. The question must, therefore, be determined by the state law. By that law, these services are deemed to have been actually rendered by the community, that is to say, by petitioner and her husband, equally.

As to uniformity of application, respondent's construction of section 31 would tend to defeat rather than promote such uniformity. It is conceded that, if an ordinary business partnership, acting through one of its members, had rendered the services here involved, such services would be deemed to have been actually rendered by the partnership, and each partner's share of the compensation received therefor would be regarded as "earned income," within the meaning of section 31. A uniform application of this section requires that the same treatment be accorded to a member of that species of partnership known as a marital community.

Furthermore, as was said in Poe v. Seaborn, 282 U.S. 101, at 51 S.Ct. 58, 61, 75 L.Ed. 239, page 117, "the constitutional requirement of uniformity is not intrinsic, but geographic. * * * And differences of state law, which may bring a person within or without the category designated by Congress as taxable, may not be read into the Revenue Act to spell out a lack of uniformity."

Decisions reversed and case remanded for further proceedings in conformity with this opinion.