## EPLEY v. COMMISSIONER OF INTERNAL REVENUE.

No. 13067.

United States Court of Appeals
Fifth Circuit.

July 12, 1950.

---

Robert Ash, Washington, D. C., for petitioner.

Francis W. Sams, Ellis N. Slack, A. F. Prescott, and Virginia H. Adams, Sp. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Int. Revenue, Charles E. Lowery, Special Attorney, Bureau of Int. Rev., all of Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and McCORD and RUSSELL, Circuit Judges.

HUTCHESON, Chief Judge.

Involving a deficiency in federal income and victory taxes for the year 1943, assessed against the taxpayer,[1] a citizen of Louisiana and a veteran of World War Two, this appeal presents a single question of law for our decision.

This question is whether, under Sec. 6 (d) (1) of that act,[2] in computing the tax for 1943, for which the taxpayer was liable, "the increase in the tax for the taxable year 1943 under subsection 6(d) (1) of the Act, should be reduced by an amount equal to the amount by which the tax for the taxable year 1942 is increased by reason of the inclusion in the net income for the taxable year 1942 of the amount of the earned net income", to-wit, the amount earned by petitioner as a lawyer in that year, or whether, as the Commissioner and Tax Court in turn have determined, upon the purported authority of regulations[3] promulgated under the Current Tax Payment Act, it should be reduced by only one-half thereof.

---

1. Under the Current Tax Payment Act of June, 1943, Chapt. 120, 57 Stat. 126.

2. Sec. 6, Relief from Double Payments in 1943: (b) Tax for 1942 greater than tax for 1943; (d) Rules for application under subsections (a), (b), and (c).—

   "(1) Application of Subsection (b) to Members of Armed Forces.—If the taxpayer is in active service in the military or naval forces of the United States or any of the other United Nations at any time during the taxable year 1942 or 1943, the increase in the tax for the taxable year 1943 under subsection (b) (1) shall be reduced by an amount equal to the amount by which the tax for the taxable year 1942 (determined without regard to this section) is increased by reason of the inclusion in the net income for the taxable year 1942 of the amount of the earned net income (as defined in section 25(a) (4)."

   "(2) Joint Returns.—If the taxpayer either for the taxable year 1942 or for the taxable year 1943 makes a joint return with his spouse, the taxes of the spouses for the taxable year for which a joint return is not made shall be aggregated for the purposes of subsections (a), (b), and (c), and in case the taxable year for which a joint return is not made is the taxable year 1943, the liability for the increase in the tax for the taxable year 1943 under subsections (b) and (c), shall be joint and several." 57 Stat. 126, 146, 147.

3. T.D. 5300, 1943 Cum.Bull. 43, Regulation under Current Tax Payment Act, Sec. 36-4 and 36-5, as amended by T.D. 5358, 1944 Cum.Bull. 53.

   Sec. 36-4 reads in part as follows: "* * * In the case of a taxpayer in the active service in the military or naval forces of the United States or of any of the other United Nations, the exclusion of earned net income from the tax base for 1942 under the provisions of section 6(d) (1) is applicable only to the individual in such service and is not applicable to his spouse who is not in such service. If, therefore, in such case the husband and wife were domiciled in a State recognized as a community property State for Federal tax purposes and rendered separate income tax returns on the community

Neither daunted nor dismayed by the action of the Commissioner and the Tax Court, the soldier taxpayer, firmly convinced of the justice of his cause and the rightness of his position, is here pressing with confidence for a reversal of their action.

He attacks as discriminatory, illegal, and void the regulations under which the Commissioner and the Tax Court grudgingly accorded him one-half instead of the full remedial relief the Congress had, in the Current Tax Payment Act, without discrimination as to any, accorded to all members of the armed forces in active service. He insists that the regulations are not in accordance with, indeed they are directly contrary to, the will of the Congress, and that the decision based upon them may not stand.

■■ We agree with the taxpayer: that the statute he invokes is highly remedial; that its terms are intended to, they do, have uniform application to all soldiers; that nothing in it provides for or suggests according to "earned income" any different treatment in the cases of soldiers from community property states from that accorded to such income in non-community property states; that in the absence of language evidencing a different purpose, this highly remedial income tax act, "is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation"; [4] and that in denying the full relief, extended by the statute to the soldier taxpayer, as the bread-winner for the family, in respect to income earned by his efforts in 1942, before he entered the service, the regulation is discriminatory, contrary to the statute, and void.

In McLarry v. Commissioner, 5 Cir., 30 F.2d 789, the Commissioner and the Tax Court had determined that in returning her one-half of the marital community income for the year 1924, the wife was not entitled to report as "earned income" one-half of the amounts received as compensation for personal services rendered by her hus-

band, a citizen of Texas. This court reversed, holding, in a well reasoned opinion: that the statute defining "earned income" as "wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered," Revenue Act 1924, § 209(a), 26 U.S.C.A. Int. Rev. Acts, page 14, included all of the income so received, no matter by whom returned, and not one-half of it; and that petitioner and her husband, together members "of a Texas marital community," and, therefore each entitled to return one-half of the community income, were together entitled to return not one-half but the whole of the "earned income".

In Graham v. Commissioner, 95 F.2d 174, 175, the Ninth Circuit, agreeing with our holding, flatly rejected the claim of the Commissioner that there should be read into the phrase "personal services actually rendered", the words "by the taxpayer", saying, "This we decline to do. We think that, if Congress had intended such a limitation, it would have expressed that intent."

■ The Commissioner, finding no such limiting provision, in the statute under construction here as he thought should be read into it, has undertaken to supply it by writing it out in his regulation. This he cannot do. His reliance, therefore, upon Sec. 6(h)[5] of the Act to support him here, will not sustain him. For while this subsection does provide, *"This section shall be applied* in accordance with regulations" (emphasis supplied), and, therefore, empowers the Commissioner to give effect to, and carry out, the will of Congress, it does not purport to, it does not, give the Commissioner the power, under the guise of regulation, to change the remedial purpose and effect of the law, and thus thwart that will.

The decisions from the Fifth and Ninth Circuits, supra, and the Treasury Regulations promulgated in acceptance thereof, on which the Commissioner relies as authority

income basis, each reporting thereon one-half of the earned income, the wife is not entitled to the benefit of the exclusion provided by section 6(d) (1) with respect to her share of the community earned income. * * * * "

4. Burnet v. Harmel, 287 U.S. 103, 53 S. Ct. 74, 77, 77 L.Ed. 199; Thomas v.

Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324.

5. "(h) Regulations.—This section shall be applied in accordance with regulations prescribed by the Commissioner with the approval of the Secretary." 57 Stat. 149.

for, are authority against the regulations on which he relies here. They but gave full effect to the intention of the Congress embodied in the statute to "create a discrimination in favor of earned income" and to apply to "earned income" a different tax treatment from that applied to "unearned". They but gave the statute the uniform nationwide application intended for it, without regard to whether the income was "earned" in community or non-community property states.

The fact that, in community property states, income earned by the personal services actually rendered by the husband, when and as received as the result of the husband's efforts, is income of the marital community and owned one-half by each, and is so returned, was not regarded as having, it did not have the effect the Commissioner contended for, of depriving part of the income earned by the husband's efforts, of the preferential statutory treatment accorded to "earned income". There the dominant purpose of the statute was to tax "earned income" differently from, that is more favorably than, "unearned income", and the statute containing no limiting language, the Commissioner's efforts to limit it were unavailing.

Here, in recognition of the fact that the soldier, the normal earner of and for the family, had been taken away from that position, the dominant purpose of the statute was to reduce the burden on him of the "increase" provisions of Sec. 6(d) (1) by "an amount equal to the amount by which the tax for the taxable year 1942 * * * is increased by reason of the inclusion in the net income for the taxable year 1942 *of the amount of earned net income*" as defined in section 25(a) (4) [Revenue Act 1938, 52 Stat. 466],[6] (Emphasis supplied).

Here, as was the case of the statute construed in the McLarry and Graham cases, this statute contains no language limiting the words "the amount of the earned net income" as the Commissioner would have them limited. There is more reason here than there was in those cases for the view that Congress did not intend or provide any such limitation.

Enacted in the midst of a war crisis and with the fundamentally just purpose of affording relief to citizen soldiers, who, members in active service of the military and naval forces of the United States, could not financially protect themselves and their families, the Congress in extending its protection was not engaged in hair splitting, or in tithing mint, anise and cummin. Drawn in a generous mood and enacted in language correspondingly generous, it was intended to, it did afford the citizen soldier in the armies of the United States, without distinction or discrimination, protection from excessive economic demands by his country which, because in its military service, he was in no position to meet or fend off.

The niggling, penny pinching spirit and language of the regulations, which, while purporting to apply it, rejects and defeats Sec. 6(d) (1) of the Act, under the purported authority of which the Commission and the Tax Court have stripped away half of the protection accorded the soldier taxpayer, stands out in striking contrast to the generous spirit and language of that section.

In, and by, Sec. 6, "Relief from Double Payments in 1943" of The Current Tax Payment Act, Congress in effect provided, as to taxpayers in general, that the tax to be paid in 1943 should not be less than the tax for the taxable year 1942. As to the soldier, however, in order to relieve him and his family from the double calamity of withdrawing him from gainful occupation and at the same time requiring him to pay in a nongainful year taxes incurred as a result of his personal efforts in a more gainful year, the Congress made a special provision. This was that, in his case, to the full extent that the tax he would be compelled to pay in 1943, was, under subsection (d) (1), increased by "reason of the inclusion in the net income for the taxable year 1942 of the amount of the earned net income", that increase in the tax he was compelled to pay should be reduced by an equal amount.

This provision, reasonable from every standpoint as written into the statute, was intended to, it had universal, uniform, and

---

6. In substance the statute construed in the McLarry and Graham cases.

just application to every soldier, regardless of the state from which he came. It was not drawn to, it did not, discriminate between soldiers from community and from non-community states, and, but for the action of the Commissioner in drafting a regulation of his own to accomplish it, no one would have thought from reading the statute that the Congress had any such unjust or unreasonable result in mind.

Restated, the relief section, in purpose and effect, comes simply to this. The Congress was unwilling to impose upon veterans, whose gainful activities had been completely disrupted and destroyed, the burden imposed upon civilians in the cross over to current payment, of having to pay, in a year in which their earning power was taken away, a tax based on monies they had earned in the gainful year of the two years dealt with. It, therefore, in effect provided that, to the extent that the taxes of the breadwinner had been increased by his personal gainful activities in the preceding year, activities which could not be repeated and, which, therefore, were not available to the family for the creation of income for 1943 to pay the tax in that year, to that extent should the tax he was compelled to pay be reduced. Thus the Congress said to the soldier breadwinner, "We are preventing you from earning any money to pay, in 1943, the taxes on money you earned in 1942. We are, therefore, excluding and forgiving the taxes you will have to pay to the extent that they are based on computation of income earned by you in 1942, thus relieving you and your family of any unjust and unreasonable burden."

We find neither equity, reason, nor authority in the regulations. They are directly contrary to the spirit and letter of the statute and void. The decision of the Tax Court is reversed and the cause is remanded with directions to disallow the deficiency based on their application.

RUSSELL, Circuit Judge, specially concurring:

In my view: this is a "close case," but the reasoning advanced and result reached by the opinion presents the sounder solution of the issue. I therefore concur. However, even though I find the regulation in question invalid because contrary to the statute and Congressional intent, I also see in the argument advanced in support of it at least sufficient ground for another's determination, even if erroneous, that the regulation accords with the statute. Therefore, I desire to make it clear that I do not think the adoption of the regulation was arbitrary.