L. H. PIERCE, Appellant,

v.

UNITED STATES of America, Appellee.

UNITED STATES of America, Appellant,

v.

Lena L. PIERCE, Appellee.

Nos. 15461, 15462.

United States Court of Appeals Ninth Circuit.

April 21, 1958.

886

Jacob, Jones & Brown, Morris J. Galen, Portland, Or., for L. H. and Lena L. Pierce.

Charles K. Rice, Asst. Atty. Gen., Grant W. Wiprud, John N. Stull, I. Henry Kutz, Arthur I. Gould, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., for United States.

Before STEPHENS, Chief Judge, and POPE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

The Pierces of Portland, Oregon, are husband and wife who filed separate federal income tax returns for the years 1946 and 1948. Their net incomes as reported for 1946 were over $65,000 each. In 1948 after deductions they had no net income and were required to pay no tax. Naturally out of their misfortunes in 1948 they are looking for "loss carry-backs" to 1946 as a basis for refunds on their taxes that year. Claiming the loss carry-backs to 1946, the taxpayers in June, 1949, filed claims for refunds which the commissioner never allowed. Consequently the taxpayers filed separate suits for refund against the United States in December, 1954, in the United States District Court for the District of Oregon. In those suits the wife prevailed and the husband was denied relief. The losing party in each case has appealed and the appeals have been consolidated.

Some detail of the financial operations of the Pierces is required. They formed a partnership in 1935 known as the L. H. Pierce Auto Service. The partnership was in continuous existence through 1948, and may still exist. In 1946 and perhaps for some years prior thereto this partnership engaged principally in the manufacture of automobile trailers. About the time the Pierces in 1947 made out their returns for 1946 they decided to form and did form an Oregon corporation known as the Pierce Trailer & Equipment Co. This company took over the trailer manufacturing end of the partnership, husband and wife each owning one half of the corporate stock. The partnership thenceforward conducted a more limited business, leasing its property to the corporation and doing some other unrelated business, principally farming.

In 1948, although the partnership received $12,000 in rents, there was a net loss for the year of $4,193.12. This was reflected on the returns of the taxpayers as a business loss from the partnership of $2,096.56 each. The Pierces also suffered a personal casualty loss of $6,782.93 from a 1948 flood. This was entered as a non-business loss in the amount of $3,391.47 for each taxpayer on his return. The next major item on the 1948 individual returns of the Pierces is the sum of $6,000 paid L. H. Pierce, the husband by the Pierce Trailer and Equipment Co. for his management services. In 1948 the state of Oregon was trying out the community property system.[1] The taxpayers properly divided this salary between their returns, showing receipt of $3,000 each.

1. The life of Oregon community property law began on July 5, 1947, and expired on April 11, 1949. See Chapter 525, Oregon Laws of 1947 and Chapter 349, Oregon Laws of 1949. Therefore, it was in effect during all of the year 1948, the second of the two years involved in the within case.

**To** resolve problems presented here it must be decided whether this salary item was:

1. Business or non-business income as to one half for the husband.

2. Business or non-business income as to one half for the wife.

Then the Pierces have a secondary point. If the salary should be ruled business income, still they say that business income or losses from each business of a taxpayer should be compartmentalized. That is to say, if the taxpayer sustained a loss in business venture "A" and made a gain in business venture "B," he need not match one against the other but may carry back the loss in venture "A" to a highly profitable year on venture "A" reflected in the return for the better earlier year, thus get a refund. Practically, the taxpayers' necessity is to disengage the salary (gain) from his or her partnership loss, so that the partnership loss need not be deducted from the salary, but may be carried back to the former year where it is really of some value, the taxes in the former year being substantial.

We are wholly concerned here with the 1939 Internal Revenue Code. Section 122, 26 U.S.C.A. § 122, provides:

"(a) *Definition of net operating loss.* As used in this section, the term 'net operating loss' means the excess of the deductions allowed by this chapter over the gross income, with the exceptions, additions, and limitations provided in subsection (d).

"(b) *Amount of carry-back and carry-over.*

"(1) *Net operating loss carryback.*

"(A) *Loss for taxable year beginning before 1950.*

"If for any taxable year beginning after December 31, 1941, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for each of the two preceding taxable years, except that the carry-back in the case of the first preceding taxable year shall be the excess, if any, of the amount of such net operating loss over the net income for the second preceding taxable year computed—

"(i) with the exceptions, additions, and limitations provided in subsection (d)(1), (2), (4), and (6), and

"(ii) by determining the net operating loss deduction for such second preceding taxable year without regard to such net operating loss and without regard to any reduction specified in subsection (c).

"(B) *Loss for taxable year beginning after 1949.* If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carryback for the preceding taxable year.

\* \* \* \* \* \*

"(d) *Exceptions, additions, and limitations.*

"The exceptions, additions, and limitations referred to in subsections (a), (b), and (c) shall be as follows:

\* \* \* \* \* \*

"(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. For the purposes of this paragraph deductions and gross income shall be computed with the exceptions, additions, and limitations specified in paragraphs (1) to (4) of this subsection."

■ Insofar as the husband's one half of the salary is concerned this court is satisfied with the holdings in Folker v. Johnson, 2 Cir., 230 F.2d 906, and Overly v. Commissioner, 3 Cir., 243 F.2d 576, wherein it is held that working for a salary puts one in the business of sell-

ing one's own service; that such salary is not non-business income.

█ The taxpayer's second contention that he can separate his businesses and carry back a loss in 1948 from business "A" to the same business "A" profit in 1946, ignoring the profit in business "B" (that is, not matching A against B, before carrying back) has some merit as an argument when Section 122(d) (5) uses the words: *"such trade or business"* (emphasis supplied). Of course, every business is a business and a taxpayer may have many businesses. Thus, he ought to be able to compartmentalize according to the statute, it is argued. But our best judgment is that the draftsman at the moment was thinking of all business of the taxpayer as being his business, as "such business." Imagine the complications that would arise if a taxpayer operated a dozen separate grocery stores and each were to be considered a separate business for the purpose of the loss carry-back provisions. If that pattern were denied to his separate businesses, then what of him with 40 different resident partners? It is just too hard to believe that the Congress intended to open up any such complications. In Section 29.122–3, Treasury Regulations 111, under the Internal Revenue Code of 1939, the commissioner seems to classify (and rightly) for loss carry-back all businesses of a taxpayer as one business.

The pertinent part of the regulation is as follows:

"Sec. 29.122–3. *Computation of Net Operating Loss in Case of a Taxpayer Other Than a Corporation.*—(a) *General.*—A net operating loss is sustained by a taxpayer other than a corporation in any taxable year if and to the extent that, for such year, there is an excess of deductions allowed by chapter 1 over gross income, both computed with the following exceptions and limitations:

\*        \*        \*        \*        \*

"(7) Ordinary nonbusiness deductions (i. e., exclusive of capital losses) shall be allowed only to the extent of the amount of ordinary nonbusiness gross income (i. e., exclusive of capital gains), plus (A) for any taxable year beginning after December 31, 1938, and before January 1, 1942, the excess, if any, of nonbusiness long-term and short-term capital gains over nonbusiness long-term and short-term capital losses, respectively, and (B) for any taxable year beginning after December 31, 1941, the excess, if any, of nonbusiness capital gains over nonbusiness capital losses."

The commissioner's regulation is sensible and one would think in accord with the probable congressional intent. So this court rejects the right to segregate the businesses for the purposes of this carry-back.

Therefore, the district court is affirmed as to the husband's case.

█ Next is the holding that the wife's half of the salary is non-business income—because she didn't earn it. This court disagrees. Of course, community property was an evanescent thing in Oregon, born under federal tax weight and expiring when the weight was shifted. So Oregon has no wealth of community property law. Section 122(d) (5), supra, does use the term "business regularly carried on by the taxpayer." But the warp and woof of community property law in the old community property states is that when the husband or the wife is at work, the community is at work; at least, in working the worker is carrying on the business of the community. Thus, it was business income. See Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239 (Washington community property income); Goodell v. Koch, 282 U.S. 118, 51 S.Ct. 62, 75 L.Ed. 247 (Arizona community property income); Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252 (Louisiana community property); and Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249 (Texas community property income).

This court's decision in Graham v. Commissioner, 9 Cir., 95 F.2d 174, holding that the salary paid the husband for

services was "earned income" of both the husband and wife may not be an identical case; therefore, not controlling, but it certainly does not call for a different result.

Really, the explanation of the decisions of Graham and of this case on the nature of the husband's labor lies in the fundamental community property concept. Of course, the Congress could ignore the state concept and reclassify. It could say the wife's one half of the wages paid the husband was not business income. See United States v. Kintner, 9 Cir., 216 F.2d 418. Here it has not issued either command or the suggestion that such be done.

Therefore, the judgment in favor of the wife is reversed.