DANIEL M. EBBERTS AND GRACE W. EBBERTS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1379-67.    Filed October 14, 1968.

*Harold Weinstock*, for the petitioners.
*B. A. Tondre*, for the respondent.

#### OPINION

RAUM, *Judge:* The Commissioner determined the following deficiences in income tax against petitioners:

| Year | Deficiency |
|------|-----------|
| 1961 | $2, 957. 65 |
| 1962 | 390. 21 |
| 1963 | 3, 094. 90 |
| 1964 | 3, 288. 19 |

Petitioners are husband and wife; they filed their joint income tax returns for the calendar years 1961–64 with the district director of

internal revenue at Los Angeles, and they resided in Whittier, Calif., when their petition herein was filed. The wife is a petitioner solely by virtue of the joint returns, and the husband will sometimes hereinafter be referred to as petitioner. The only issue presently in controversy is whether unpaid bonuses earned by petitioners' son as an employee of the husband's sole proprietorship are entirely nondeductible by reason of section 267 of the 1954 Code, or whether one-half thereof may nevertheless be deducted because such bonuses constituted community property of the son and his wife. The facts have been stipulated.

Petitioner owned and operated an advertising agency, Dan Ebberts & Co., as a sole proprietorship. His son, Richard Ebberts, was an employee of the advertising agency. Richard was married to Maxine Ebberts, who was not otherwise related to petitioners in any degree. She was not an employee of the advertising agency. Richard and Maxine were residents of California, and Richard's earnings constituted community property of both of them under the law of that State. The annual accounting period of petitioners as well as that of Richard and Maxine was the calendar year. During each of the years 1961, 1963, and 1964 Richard earned a bonus of $5,000 which, however, was not in fact paid within the respective years or within the following 2½ months. The advertising agency used an accrual method of accounting, and these bonuses were deducted on petitioners' returns. Richard and Maxine, on the other hand, used a method of accounting (presumably the cash method) by reason of which the bonuses were not includable in their gross income unless and until paid.

The Commissioner ruled that section 267(a)(2) of the 1954 Code [1] precluded the deduction of these $5,000 bonuses. Although petitioners

---

[1] SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.

(a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

* * * * * * *

(2) UNPAID EXPENSES AND INTEREST.—In respect of expenses, otherwise deductible under section 162 or 212, or of interest, otherwise deductible under section 163,—

(A) If within the period consisting of the taxable year of the taxpayer and 2½ months after the close thereof (i) such expenses or interest are not paid, and (ii) the amount thereof is not includible in the gross income of the person to whom the payment is to be made; and

(B) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(C) If, at the close of the taxable year of the taxpayer or at any time within 2½ months thereafter, both the taxpayer and the person to whom the payment is to be made are persons specified within any one of the paragraphs of subsection (b).

(b) RELATIONSHIPS.—The persons referred to in subsection (a) are:

(1) Members of a family, as defined in subsection (c)(4);

* * * * * * *

(c) * * *

(4) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; * * *

originally claimed the deductions in full, they now concede the correctness of the disallowance of the deductions to the extent of their son's one-half community interest in the bonuses, but contend that since the other half represents community property of their daughter-in-law, it is not governed by section 267(a) (2). We hold otherwise.

To be sure, a daughter-in-law is not within the degree of relationship which brings into play the operation of section 267(a) (2), cf. *Fervel Topek*, 9 T.C. 763; *Walter Simister, Jr.*, 4 T.C. 470, and, if Maxine had been an employee of the advertising agency, the nonpayment of her earnings within the statutory period would not deprive her father-in-law of the right to deduct the earnings thus accrued. But Maxine was not an employee, and her earnings are not involved herein. Of course, as a consequence of the California community property laws, she had a derivative interest in one-half of her husband's earnings, and, if she had filed separate income tax returns [2] she would have been obliged to report her one-half interest in those earnings for the year or years in which they would otherwise be reportable. *United States* v. *Malcolm*, 282 U.S. 792. However, the fact remains that it was Richard, and Richard alone, who performed the services upon which the bonuses herein were based. And it was he alone who had any employment relationship with the advertising agency. As manager of the community property, it was Richard, and Richard alone, who could exercise absolute control over the time of receipt of his earnings by arrangement with his father, notwithstanding Maxine's community interest therein. His father had no contractual or other duty to pay any of Richard's earnings to anyone other than Richard. Thus, it was Richard, and not Maxine, who was literally "the person to whom the payment [was] * * * to be made." Sec. 267(a) (2).

Moreover, it is the literal reading of the statute that properly gives effect to its purpose in this case. For, it was Richard, rather than Maxine, who had the right and power to enter into arrangements with his father relating to the time of payment of the *entire* bonus, and thus to attempt to manipulate the taxes payable, the very vice that the statute so plainly sought to eliminate. This is therefore a case where there is no justification to depart from the clear language of the statute, for any such departure would defeat rather than give effect to the obvious legislative purpose.

That Richard had such powers of control under California law is clear. It is quite true, as argued by petitioners, that a wife's interest in

---

[2] The record herein does not explicitly disclose whether she filed separate returns or joint returns with her husband; but the stipulation of facts raises a strong inference that they filed joint returns, because it refers to "the method of accounting of Richard and Maxine," and states that the amounts of the bonuses were not includable in "their" gross income unless and until paid.

the community property is regarded as "vested" in California, *Estate of Kelley*, 122 Cal. App. 2d 42, 43, 264 P. 2d 210, 212, and that the respective interests of the spouses are stated to be "present, existing and equal" in section 161a of the Civil Code of California. But those interests are further stated in section 161a to be "under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code." And section 172 of the California Civil Code explicitly sets forth the nature of the husband's management and control as follows: [3]

The husband has the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate; *provided, however*, that he can not make a gift of such community personal property, or dispose of the same without a valuable consideration, * * *

Thus, although the husband's plenary control is sometimes referred to as being in the nature of a fiduciary power in respect of which the wife may seek legal redress in the event of a breach of the husband's fiduciary duties,[4] his control is nevertheless characterized by statute as "absolute," except that he may not make testamentary disposition of his wife's one-half interest, nor may he make a gift or dispose of it without a valuable consideration. And there is nothing in applicable California law that has been called to our attention that would prevent the husband from entering into arrangements with his employer relating to the time of payment of his earnings regardless of his wife's community interest therein. Further, the wife herself would have no right to bring any action demanding payment of those earnings, for it appears to be well established that it is the husband who must bring all actions concerning community property.[5] *Sbarbaro* v. *Rosa*, 48 Cal. App. 2d 584, 587, 120 P. 2d 151, 153; *Sanderson* v. *Niemann*, 17 Cal. 2d 563, 567–8, 110 P. 2d 1025, 1027; and *Johnson* v. *National Surety Co.*, 118 Cal. App. 277, 229–230, 5 P. 2d 39, 40. Accordingly, it was Richard alone who could exercise plenary control, in conjunction with his father, in fixing the time of payment of his earnings, and Maxine did not even have the right to bring suit against her father-in-law for immediate payment of her one-half community interest in those earn-

---

[3] Sec. 171c provides for management and control by the wife in certain limited situations involving "community property money earned by her, or community property money damages received by her for personal injuries suffered by her, until it is commingled with other community property."

[4] *Johnson* v. *National Surety Co.*, 118 Cal. App. 227, 230, 5 P. 2d 39, 40; *People* v. *Schlette*, 139 Cal. App. 2d 165, 293 P. 2d 79.

[5] Of course, in cases involving community property under the control of the wife, like suits to recover her earnings or to obtain damages for injury to her person, she may sue without having her husband joined as a party. Sec. 370, Cal. Civ. Code.

ings.[6] It was that control, which resided in Richard, that gives particular justification to a literal reading of the statute, for he was indeed "the person to whom the payment [was] * * * to be made." Any other reading would fail to give effect to the obvious statutory objective of preventing the manipulation of tax liabilities through control of time of payment by certain related persons.

We are mindful that the wife's community property interest in her husband's earnings has resulted in a variety of decisions affecting their tax liabilities. But in general, a common thread runs through these decisions, namely, an effort by the courts to interpret the various statutory provisions in such manner as to produce uniformity of treatment of spouses throughout the country, whether they reside in community property States or elsewhere. Thus, *Renoir* v. *Commissioner*, 321 F. 2d 605 (C.A. 9), affirming 37 T.C. 1180, involved section 911(a)(2) of the 1954 Code which provided an exemption from gross income of up to $20,000 in respect of "earned income" from sources without the United States in specified circumstances, and it was contended that, since the husband and wife taxpayers were domiciled in California, the wife's community property interest in one-half of her husband's foreign earned income should be diminished by the statutory $20,000 exemption, thereby providing a $20,000 exemption in respect of the income of each of them. Such, of course, would have been the result if the wife's one-half interest in the earned income were treated literally as her own earned income. But it was held that "in the absence of a 'clear-cut statutory mandate' an intention should not be attributed to Congress to grant preferential treatment to taxpayers who live in community property states." 321 F. 2d at 607.[7] Similarly, in *John E. Ross*, 37 T.C. 445, we concluded that the statutory $1,000 limit on capital loss deductions was not to be expanded so as to allow a deduc-

---

[6] Indeed, it seems to be highly doubtful whether Richard's employer would have been justified in voluntarily paying Maxine one-half of those earnings. *McMullin* v. *Lyon Fireproof Storage Co.*, 74 Cal. App. 87, 239 P. 422, although decided prior to the 1927 amendments to the California community property laws, would appear to support that conclusion, and there is no satisfactory showing that the same result would not be reached under the present statute.

In *McMullin* it was held that a warehouseman who delivered community property, which had been deposited by the husband, to the wife did not satisfy California law that provided that a warehouseman was justified in delivering goods to a "person lawfully entitled to the possession of the goods."

[7] Petitioners rely upon *Graham* v. *Commissioner*, 95 F. 2d 174 (C.A. 9), which held that the wife's community interest in her husband's professional fees was to be treated as "earned income" for purposes of the earned income credit allowed under sec. 31 of the Revenue Act of 1928. The opinion in that case is to some extent inconsistent with the thoughts expressed in the later opinion of the same Court of Appeals in the *Renoir* case. In any event, the failure to treat the wife's community interest as earned income, at least in those cases where the husband's one-half interest was not in excess of the statutory $30,000 limit, would have resulted in discrimination against the residents of community property States, for such residents would thus lose a portion of the earned income credit that Congress intended to allow and that was available to residents of the other States.

tion of $1,000 to each spouse in California, notwithstanding that the loss related to the community property of husband and wife and that one-half thereof was properly allocable to each.

On the other hand, in *Pierce v. United States*, 254 F. 2d 885 (C.A. 9), it was held that the wife's one-half community interest in her husband's salary was her "business income" so that an admittedly business loss had to be applied against it rather than be carried back to offset other admittedly business income of a previous year. The result, however, reflected an interpretation of the statute that achieved uniformity of treatment of taxpayers in community and noncommunity property States. Again, in *Epley v. Commissioner*, 183 F. 2d 1020 (C.A. 5), the court not only treated a wife's one-half community property interest in her serviceman-husband's 1942 "earned income" as her own "earned income," but construed section 6(d)(1) of the Current Tax Payment Act of 1943 in such manner as to accord that one-half interest the same benefits that were available only to members of the Armed Forces. In reaching that result the court stressed the fact that the statute was not intended to discriminate between taxpayers "from community and from non-community states." 183 F. 2d at 1024. Cf. *E. R. Kaufman*, 9 B.T.A. 1180.

Although the theories discussed in the cases are not always consistent and at times are even confusing, there is nevertheless a discernable underlying principle that is common to virtually all of these cases, even though it may be articulated only on occasion, namely, that unless there is a clearly manifested legislative purpose to the contrary, the revenue laws will be interpreted in such manner as to prevent discrimination either for or against residents of community property States. And in the present case the position of petitioners calls for an interpretation of the statute that discriminates in favor of such residents. We will not approve any such interpretation, particularly where the literal language of the statute requires the opposite result.

Petitioners place great reliance upon *Arizona Publishing Co.*, 9 T.C. 85, involving section 24(b) of the 1939 Code, predecessor of section 267(a)(1) of the 1954 Code.[8] In that case petitioner corporation sold real estate at a loss to one Stauffer, an officer and holder of 27 percent of petitioner's stock. Stauffer was married, and his sister was married to Knorpp, a 54-percent stockholder in petitioner. Both couples resided in Arizona, and all the stock involved was community property. Stauffer purchased the real estate with community funds.

---

[8] SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.

(a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

(1) LOSSES.—In respect of losses from sales or exchanges of property (other than losses in cases of distribution in corporate liquidations), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b).

The Court held that Stauffer constructively owned the 27 percent of petitioner's stock attributable to his sister (Mrs. Knorpp) under Arizona community property law. He thus owned, directly or indirectly, 54 percent of petitioner's stock and was within the relationships designated in the statute. The Court concluded its opinion by saying (p. 88) :

> We hold accordingly that the loss realized by petitioner upon that portion of the property sold by it to Charles A. Stauffer may not be the subject of a deduction in computing net income. Respondent at the hearing and on brief admits error as to disallowance of more than one-half of the claimed loss, in view of the fact that it appears that the sale of the property was to Stauffer and his wife and was paid for with community funds. Consequently, one-half of the property must be considered as sold to Mrs. Stauffer, whose actual and constructive ownership of petitioner's stock on the critical date represented only the stock directly owned by her and the stock directly owned by her husband on such date, which is less than 50 per cent of the total stock outstanding. Concededly that portion of the loss attributable to the property sold Mrs. Stauffer is properly deductible. *Walter Simister, Jr.*, 4 T.C. 470.

We think that *Arizona Publishing Co.* is not controlling here. In the first place, the issue relating to the one-half portion of the loss allocable to the sale to Stauffer's wife was never adjudicated. Moreover, although there is a superficial resemblance between the problem in that case and the one before us, that case dealt with different statutory provisions and different considerations were involved. A basic purpose of section 267(a)(2), which governs the present case is to encourage the actual payment of accrued expenses in transactions between specified related parties. The loss subsection (sec. 267(a)(1)), on the other hand, is based on the theory that even legally genuine intragroup transfers are not economically genuine realizations of loss and are therefore not appropriate occasions for the allowance of deductions. See *McWilliams* v. *Commissioner*, 331 U.S. 694, 699; *James H. Merritt, Sr.*, 47 T.C. 519, 526–527, affirmed 400 F. 2d 417 (C.A. 5).

In the case of a sale of community property, where both husband and wife have vested interests in the property, it may be proper to consider each as a seller in determining whether the relationships set out in the statute exist,[9] for the inquiry is whether the property has merely been shifted to a related party. It is not control over the timing of the loss that is important, but rather whether there has been a "genuine loss" in the sense that ownership has been transferred from an unrelated economic unit. Similarly, when property is purchased with community funds, as in *Arizona Publishing*, both husband and wife have given up something, and again inquiry into the relationship

---

[9] See, e.g., *Norman P. Van Valkenburgh*, 26 T.C.M. 753, 755, 36 P–H. Memo. T.C. par 167 162 ; Rev. Rul. 121, 1953–2 C.B. 209.

of each to the seller is warranted in order to see whether a "genuine loss," with economic substance has occurred. In the present case, however it, is not enough to consider "tax ownership" of the expenses accrued. The statute is concerned with the question whether payment will possibly be postponed because of the existence of certain designated relationships, and the proper focus is on the element of control, as described above.

Petitioners contend that inconsistencies in the statute would appear if Richard is considered "the person to whom the payment is to be made" within the meaning of section 267(a)(2) and (c). Petitioners argue that, under this interpretation of the phrase, the disallowance of one-half the expense deduction would be required even if Richard and Maxine were accrual basis taxpayers. They contend that in such a case the requirements of 267(a)(2)(A) and (B) would still be met, for the amount of the bonuses would not be "includible in the gross income of the person to whom the payment is to be made [Richard]" under either subsection. As the Commissioner points out, however, section 267(a)(2)(B) requires that the nonincludibility must be "by reason of the method of accounting of the person to whom the payment is to be made." In petitioners' hypothetical case the noninclusion would be due not to a method of accounting, but to State community property laws; accordingly, in that situation the conditions for denying the deduction to the employer would not be met.

In light of our view of this case, it is unnecessary to consider what the interpretation of the clause "the person to whom the payment is to be made" would be in all situations. Consequently, we do not have to accept the Commissioner's apparent position that it must always mean the person to whom physical payment is to be made, nor do we express an opinion as to the validity of this position. Our holding regarding the meaning of this language is limited to the particular controlling facts of this case: the nature of the payments involved, the accounting method of Richard and Maxine, and the California laws regarding community property.

*Decision will be entered under Rule 50.*