B. A. Faucher and Florence M. Faucher v. Commissioner.
Faucher v. Commissioner
Docket No. 5388-68.
United States Tax Court
T.C. Memo 1970-217; 1970 Tax Ct. Memo LEXIS 144; 29 T.C.M. (CCH) 950; T.C.M. (RIA) 70217; July 28, 1970, Filed J. Dennis Faucher, P.O. Box 1559, Boise, Idaho, for the petitioners. Gary R. DeFrang, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: Respondent determined deficiencies in income tax in the amounts of $1,103.01, *145 $1,107.93, $863.21 and $181.00 for the taxable years 1961, 1962, 1963, and 1964, respectively. The only issue for decision relates to the treatment to be accorded the loss of $39,000 sustained by petitioners upon the termination of their wholly owned corporation in 1964. The only issue relating to the taxable years 1961, 1962 and 1963 is whether the petitioners are entitled to deduct for those years a net operating loss carry-back from 1964. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. B. A. Faucher and Florence M. Faucher are husband and wife and were such during the taxable years 1961, 1962, 1963, and 1964. At the time of the filing of the petition herein they were residents of Boise, Idaho. They filed their joint Federal income tax returns for the taxable years 1961, 1962, 1963, and 1964 with the district director of internal revenue for the district of Idaho. As a matter of convenience, B. A. Faucher will hereinafter be referred to as the petitioner. From 1927 to 1942 the petitioner was employed in various capacities by U.S. Rubber Company. In 1944 he and another former employee of U.S. Rubber Company formed a partnership *146 and purchased a distributorship of U.S. Rubber Company in Boise. The partnership business consisted of the retail and wholesale sales of new tires, the operation of a tire recapping service, and the sale of allied merchandise, principally batteries. Petitioner and his partner shared the management responsibilities of the business. A few years after this, petitioner purchased his partner's interest in the business. Thereafter, until January 2, 1956, petitioner operated the business as a sole proprietorship. As sole proprietor, he had complete control of the management of the business. On January 2, 1956, petitioner incorporated his sole proprietorship under the name of Royal Tire & Battery Company, Inc. (hereinafter referred to as the corporation), pursuant to the laws of the State of Idaho. The corporation engaged in the same business activities as had been carried on by the sole proprietorship. The corporation issued 250 shares of stock having a par value of $100 per share in exchange for the assets of the sole proprietorship which were transferred to the corporation. Petitioner received 249 shares and his wife received one share. Their basis in this stock was $25,000. This was *147 the only stock ever authorized or issued by the corporation, and petitioner and his wife were its only shareholders during its existence. Petitioner's decision to incorporate his sole proprietorship was based upon the advice of his accountant that operation of the business in corporate form would prevent an interruption in its activities in the event of petitioner's death. Income from the business was the only source of support for petitioner and his family. By incorporating, petitioner thus sought to insure that the business would continue to provide income to his family in the event of his death. In forming the corporation, petitioner retained the services of an attorney, but discussed with him only this advantage of conducting the business in a corporate form. Petitioner was the president of the corporation and his wife was its secretary-treasurer. They also served as directors of the corporation throughout its existence. Two other individuals were listed as directors for short periods of time during the corporation's existence. From the time of its incorporation there were never any formal corporate meetings held. During its existence the corporation had an average of 8 or *148 9 employees, consisting of salesmen, recap servicemen, and office personnel. The corporation did not employ a bookkeeper but retained an accounting firm to keep its books. Petitioner was employed by the corporation as its general manager, receiving a salary from the time of its incorporation until it terminated business. 952 As president and general manager, petitioner had complete and exclusive control of the operation of the business. During the years 1958 through 1964, petitioner received as salary from the corporation the respective amounts of $8,850, $7,800, $8,400, $9,000, $9,000, $7,800, and $4,325. From the time the corporation was formed until it terminated business, all of the income of petitioner, other than minor interest income, came from salary paid by the corporation to him. During its existence, the corporation maintained a bank account in the corporate name and corporate liabilities were paid through the corporate bank account. Customers of the business were billed in the corporate name. The assets of the business were owned by the corporation, and it carried fire insurance in its name on the corporate property. The premises used for the operation of the business *149 after 1962 were leased to the corporation. All of the employees of the business, including the petitioner, were paid with corporate funds. For each year during its existence, the corporation filed Federal corporate income tax returns. From the time of its formation until it ceased operations, the corporation suffered net operating losses as follows: Year
Loss
1956
$ 759.35
1957
8,176.37
1958
1,750.83
1960
5,572.52
1961
4,717.73
1962
5,391.17
1963
11,317.84
1964
3,056.68 For the taxable year 1959, the corporation had taxable income of $1,700.38. After the incorporation of the business, petitioner at times undertook personal responsibility on some of the corporation's obligations. In 1962, the corporation obtained a lease on the premises used in the business, but petitioner and his wife were required to assume personal liability under the lease. At times, in order to receive a 2% discount from U.S. Rubber Company for prompt payment of accounts, the corporation borrowed money from a bank on short-term notes which were guaranteed by petitioner. In the later years of the operation of the business, as the amount of outstanding accounts payable to U. *150 S. Rubber Company increased, such company required the corporation to execute long-term notes to it and required the petitioner's personal guarantee. In addition, U.S. Rubber Comany received chattel mortgages on the corporation's machinery and accounts receivable. In 1963, the corporation was heavily indebted to U.S. Rubber Company. Its financial condition was such that it could not obtain loans from local banks or through the Small Business Administration. The U.S. Rubber Company, in order to force payment on the indebtedness, was threatening to foreclose its chattel mortgages. In June 1963, petitioner loaned the corporation $2,000 in order that the corporation could pay its current accounts payable and receive the cash discount from U.S. Rubber Company. The $2,000 was entered on the corporation's books under the account "Notes Payable - Other". No note was given and there was no provision for interest. In July 1963, the accountant transferred such amount to the account "Capital Stock Outstanding". Petitioner was unaware of the transfer on the books until the monthly statement was prepared, and when it was called to his attention by the accountant he made no objection since he *151 relied upon the accountant to properly handle accounting matters. On December 13, 1963, petitioner deposited $12,000 in the corporation's checking account. No note was given and the amount was not recorded as a loan. Entries were made in the corporation's books which reflected the $12,000 as having been a contribution to capital and on December 31, 1963, this $12,000 was shown as an increase in the "Capital Stock Outstanding" account. [1] Petitioner was unaware of this entry on the books until the monthly statement was prepared, and when it was called to his attention by the accountant he approved the entry. This $12,000 was deposited to the account of the corporation so that the corporation could make payment on its obligation to U.S. Rubber Company which was continuing to threaten the foreclosure of its chattel mortgages. On December 13, 1963, the corporation paid U.S. Rubber Company $14,703.36. At this time there was no reasonable possibility of the corporation's continuing to operate the business. *152 953 At the time petitioner transferred the $2,000 and at the time he transferred the $12,000 to the corporation, the corporation was otherwise unable to pay its bills as they became due. The petitioner's purpose in transferring both the $2,000 and the $12,000 to the corporation was to prevent U.S. Rubber Company from foreclosing on the chattel mortgages which would have forced the corporation to cease operations. His purpose was to attempt to make it possible for the corporation to stay in business and for him to thereby continue his employment and his source of income. In 1964, the corporation ceased to conduct business. The assets of the corporation were transferred to U.S. Rubber Company which assumed the corporation's liabilities. No cash was paid to the corporation or to petitioner for the transfer of the assets. The transfer was made at the insistence of U.S. Rubber Company and was the result of threats by it to foreclose the mortgages it held. Petitioner agreed to this because he was incapable of paying all the corporation's debts. Four or five months after the transfer, U.S. Rubber Company released petitioner from his personal liability to it. In its income tax return *153 for the taxable year 1964 the corporation reported a gain of $3,069.04 from the transfer of its assets to U.S. Rubber Company, but reported a net loss for the year of $3,056.68. After the corporation ceased operations, petitioner had great difficulty finding a job. About 6 months later, petitioner was able to get a job in a real estate business. Petitioner's wife has had no employment since 1931. Under the laws of the State of Idaho, all income of petitioner and his wife was the community property of both. Likewise, all assets owned by petitioner and his wife, or either of them, were the community property of both. Petitioner has never loaned any substantial amounts of money to anyone other than the corporation. Petitioner and his wife have invested in no corporations other than the corporation involved herein. On their joint income tax return for the taxable year 1964, petitioners claimed an ordinary loss deduction of $39,000 from liquidation of the corporation, and reported a net operating loss in that amount. They applied for, and were tentatively allowed, net operating loss carryback deductions for the taxable years 1961, 1962, and 1963, resulting in refunds for those years. *154 In the notice of deficiency, respondent disallowed the claimed ordinary loss deduction of $39,000 and determined that the petitioners did not sustain a net operating loss in the taxable year 1964 within the meaning of section 172 of the Internal Revenue Code. He accordingly determined that petitioners were not entitled to any net operating loss carryback to the taxable years 1961, 1962, or 1963. Respondent determined that the petitioners had a capital investment of $39,000 in the corporation and that in 1964 they sustained a capital loss in that amount. He further determined, in the alternative, that if any portion of the $39,000 paid by petitioners to the corporation constituted a loan, then the debt owing to petitioners was a nonbusiness bad debt deductible only as a capital loss. He further determined that, in either event, deduction for the loss was subject to the limitations placed on capital losses by section 1211 of the Internal Revenue Code and allowed petitioners a capital loss of $1,000 for the taxable year 1964. Opinion Petitioner contends that upon the termination of the corporation in 1964 he became entitled under section 165 of the Internal Revenue Code *155 of 1954[2] to deduct as a loss incurred in a trade or business the amount of $39,000, consisting of the original investment of $25,000 in the corporation, plus the amounts of $2,000 and $12,000 transferred to the corporation in 1963. In support of this contention, the petitioner urges that the corporate entity be disregarded since, he claims, the business was carried on in all important respects as if it were a sole proprietorship and that there were no personal, business, or other reasons for the formation of the corporation. The respondent maintains that the corporate entity must be respected, that the amount of $39,000 represented a capital investment in the corporation, *156 and that the 954 loss of $39,000 sustained by petitioner in 1964 was a capital loss, [3] rather than a loss incurred by petitioner in his trade or business. In Moline Properties, Inc. v. Commissioner, 319 U.S. 436, the Supreme Court stated: The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. * * * In National Carbide Corporation v. Commissioner, 336 U.S. 422, the Supreme Court commented that the Court of Appeals for the Second Circuit *157 correctly held: that under our decisions, when a corporation carries on business activity the fact that the owner retains direction of its affairs down to the minutest detail, provides all of its assets and takes all of its profits can make no difference tax-wise. * * * In the instant case the petitioner caused the corporation to be created in order to enable the business to continue in operation in the event of his death, and hence provide income for his family. Furthermore, the corporation, as such, did carry on the business, as shown in the Findings of Fact. Under the circumstances, the corporate entity cannot here be disregarded and the amounts advanced by petitioner to the corporation cannot be treated as expenditures in a business conducted by him. See Ernest H. Weigman, 47 T.C. 596, affd. (C.A. 9) 400 F. 2d 584. Any amounts paid by the petitioner for the stock of the corporation or any amounts contributed to its capital constitute capital investments, the loss of which represents a capital loss rather than an ordinary loss to him. There can be no question that the original investment of $25,000 was a capital investment and, as stated, the respondent *158 contends that the additional amounts of $2,000 and $12,000 furnished the corporation by the petitioner in 1963 also constituted contributions to the capital of the corporation. The petitioner contends that if the corporate entity may not be disregarded with the result that the amounts of $2,000 and $12,000 did not constitute losses incurred in his trade or business, then such amounts should be recognized as loans and that when the corporation ceased operations in 1964 he became entitled to business bad debt deductions on account thereof under section 166 of the Internal Revenue Code of 1954. [4]
*159 The question whether advances to a corporation by a stockholder create debts, or constitute contributions to the equity of the corporation depends upon the circumstances of each particular case. Lundgren v. Commissioner, (C.A. 9) 376 F. 2d 623. From such facts and circumstances it must be decided whether the stockholder in fact intended an advance to create a debt rather than equity. A. R. Lantz Co., Inc. v. United States, (C.A. 9) 424 F. 2d 1330. As we pointed out in Irving D. Fisher et ux, 54 T.C. 905, the judicial ascertainment of someone's subjective intent in this respect is frequently difficult, and his true intention is to be determined not only from the direct testimony as to intent but from a consideration of all the evidence, an essential consideration being whether there was a reasonable expectation of repayment in light of the economic realities of the situation. 955 Upon a consideration of all the facts, it it our conclusion that the $12,000 transferred to the corporation in December 1963 by the petitioner did not constitute a loan. In the first place, there was no instrument or bookkeeping entry denominating the transfer *160 as a loan. While it is true that the petitioner testified that he expected this amount to be repaid in whole or in part if the corporation were successful, he also testified, in effect, that there was little hope that the corporation would continue in business. There was at that time no reasonable expectation of repayment. We accordingly agree with the respondent that the $12,000 payment did not constitute a loan, but, rather, a contribution to the capital of the corporation. However, we have reached the opposite conclusion with respect to the amount of $2,000 transferred by petitioner to the corporation in June 1963. To begin with, the parties have stipulated that the petitioner loaned the corporation the $2,000. This amount was entered on the books as a loan. The amount was advanced in order that the corporation could pay its current accounts payable and receive the cash discount from the U.S. Rubber Company. In this respect the advance was similar to the short-term bank loans guaranteed by petitioner which the corporation had theretofore obtained for that purpose. It is true that in July 1963 this amount was transferred by the accountant to the capital account of the corporation, *161 but this was done without the prior knowledge of the petitioner. When this was later called to the petitioner's attention he did not object since, as he testified, he relied upon the accountant to properly handle accounting matters. Under the circumstances, we do not feel that the petitioner intended to convert the advance from a loan to a contribution. We accordingly hold that the $2,000 advanced by the petitioner constituted a bona fide loan which became worthless when the corporation ceased operations in 1964. The respondent advances the further contention that if the petitioner sustained a bad debt loss of $2,000 in 1964 it was a nonbusiness bad debt, and that such loss is deductible only as a capital loss under section 166(d) of the Code. Under that section a business bad debt is a debt created in connection with a trade or business of the taxpayer. Section 1.166-5(b) of the Income Tax Regulations provides, in effect, that a debt, to be considered a business debt, must be proximately related to the taxpayer's trade or business. The respondent, while conceding that the activities of the petitioner as president and general manager of the corporation constituted a trade or business *162 for the purpose of section 166(d), contends that petitioner has not proven that the debt was proximately related to such trade or business, since he has not established that his employment furnished the dominant and primary motivation for making the loan, citing Biblock v. Commissioner (C.A. 7) 417 F. 2d 1185. In deciding this question we find it unnecessary to resolve the apparent conflict between such test and the "significant" motivation test employed in Weddle v. Commissioner, (C.A. 2) 325 F. 2d 849. We are satisfied that the petitioner's primary purpose in advancing the $2,000 to the corporation was to make it possible for him to continue his employment with the corporation. He so testified in effect, and the evidence shows that, with a very minor exception, this employment was his only source of income. In view of the foregoing, we conclude that the $2,000 debt was a business debt which became worthless in 1964 and that consequently the petitioner is entitled to deduct the full amount thereof for that year. [5]
*163 Decision will be entered under Rule 50. 956 Footnotes
1. On the balance sheet filed as part of its corporate income tax return for the taxable year 1963, the corporation stated capital stock in the amount of $25,000 at the beginning of the taxable year and $39,000 at the end of the taxable year.↩
2. Section 165 provides in part as follws: SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * * (c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business * * *↩
3. The respondent also contends that even if the corporate entity were disregarded the petitioner has not established that he had in 1964 incurred a loss of $39,000, or any amount, in his trade or business. In the view we take of the case, it is unnecessary to consider this alternative contention of the respondent.↩
4. Section 166 provides in part as follows. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. * * * (d) Nonbusiness Debts. - (1) General rule. - In the case of a taxpayer other than a corporation - (A) subsections (a) and (c) shall not apply to any nonbusiness debt; and (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months. (2) Nonbusiness debt defined. - For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than - (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.↩
5. The respondent makes the further argument that since all property of the petitioners was community property, both petitioners should be considered as creditors of the corporation and that hence in no event would more than one-half of a debt be deductible, since it cannot be considered that the half of the loan made by the petitioner Florence M. Faucher was proximately related to a trade or business carried on by her. We think this argument is without merit. Suffice it to say that in Pierce v. United States (C.A. 9) 254 F. 2d 885↩, the court pointed out that under community property law "when the husband or the wife is at work, the community is at work; at least, in working the worker is carrying on the business of the community."